THOMAS BLAND et al., Respondents, v AMIR MANOCHERIAN et al., Doing Business as FRAYDUN REALTY CO., Appellants and Third-Party Plaintiffs-Appellants-Respondents. BARNEY SCHOGEL, INCORPORATED, Third-Party Defendant-Appellant.

First Department, May 31, 1983

#### APPEARANCES OF COUNSEL

*William F. Larkin* of counsel (*Douglas E. McKeon* with him on the brief; *Raymond Green,* attorney), for third-party defendant-appellant.

*John P. Gibbons* of counsel (*Flynn, Gibbons & Dowd,* attorneys), for appellants and third-party plaintiffs-appellants-respondents.

*Mark Tobak* of counsel (*Melvin Sacks* and *Jon Green* with him on the brief; *Sacks & Sacks,* attorneys), for respondents.

#### OPINION OF THE COURT

ASCH, J.

On October 25, 1979, plaintiff Thomas Bland, an ornamental iron worker with some 40 years of experience and employed by third-party defendant-appellant Barney

Schogel, Inc. for 25 years, was engaged in replacing existing wooden windows at a 67-apartment residential building. This was in fulfillment of an agreement between Schogel and the building's owner, Fraydun Realty Co. Schogel personnel had been employed at the premises for about two months prior to October 25, 1979. Bland had been working at the building for about two weeks.

On the day of the accident, plaintiff Bland had been alone inside apartment 4C replacing the three octagon-shaped windows which comprised the living room's bay window. He commenced this activity sometime before lunch. For certain aspects of the task, Bland allegedly utilized one of the Schogel supplied A-framed step ladders, approximately five feet in height. He testified that the ladder did not have skid pads, and that the floor upon which he placed the ladder near the bay windows was of a wood surface and slippery. Yet, the building's superintendent, Mr. Rodriquez, and the then occupant of apartment 4C, Miss Ann Curtis, testified, on behalf of third-party defendant, that the living room floor, including the area near the bay windows, was fully carpeted on the day of the accident.

Mr. Bland testified that the living room ceiling in apartment 4C was approximately nine feet from the floor. The bay windows started at about three feet from the floor, continuing to a height of about seven to seven and one-half feet from the floor. Each of the three bay windows consisted of an upper and lower sash (the operating part of the window, i.e., the wood frame and glass) which was about three feet wide and about four feet in length, according to plaintiff. There were window sills which provided about six to eight inches of extension.

Late that morning, Mr. Bland started to remove the left bay window. Using a screw driver, he pried off the weather strips situated at the bottom and on the sides of the lower sash. He raised the lower sash, pulled off the zinc strips and commenced chiseling off the lower running strips. These procedures were accomplished without use of a ladder.

After lunch, Bland completed removing the lower running strips. He then pushed the upper and lower sashes as

far down as possible, and, allegedly using the five-foot stepladder, removed the strips on the upper portion of the window. With both sashes in the lowermost position, Bland began to remove the upper and lower sashes. Allegedly using the stepladder on which he claimed to have placed both feet on the third step, Bland pushed in and outward on the left side of the sashes while pulling in on the right side, toward the inside of the apartment. The procedure required that the sashes be "twisted" about three inches in order to obtain about a one-half inch clearance so that the sashes could be pulled inside the apartment. Bland testified that it was unnecessary for him to lean outside the window or to place any part of his body outside the window in order to remove the existing wooden sashes. It was during this removal of the wooden sashes that Bland claims the ladder slipped or collapsed causing him to fall into the courtyard below.

Bland stated that the ladder he had been using was shaky, but that he had used it for about five minutes prior to the accident. He denied that he had placed all or part of his body atop of the window sill area at the time of the accident.

William King, a Schogel employee at the building on the day of the accident and for several weeks prior thereto, testified that the Schogel ladders were A-frame stepladders with joints in the middle which, when fully opened, were normally steady.

Over objection, Mr. King was permitted to testify that Schogel's men had not been provided with safety belts for the work being performed inside the apartments. Schogel had objected that there was no foundation laid to establish need or requirement for safety belts for this type of work. Throughout the trial, the court restricted counsel for Schogel from establishing that safety belts are generally not utilized nor required when one is installing windows from inside an apartment.

The case was submitted to the jury solely on the issue of whether defendant Fraydun violated subdivision 1 of section 240 of the Labor Law. In that regard, the court charged the jury that a violation of Industrial Code rules

and regulations (12 NYCRR ch I) would be sufficient to establish liability under subdivision 1 of section 240 of the Labor Law.

In response to an interrogatory propounded to the jury, it found that the ladder supplied to plaintiff was "proper and safe" for the work performed on the day of the accident. The jury's finding in favor of plaintiff was based solely on his not having been provided with a safety belt. Thomas Bland was awarded the sum of $661,500 and Alma Bland the sum of $100,000 on her derivative cause of action against defendant-appellant Fraydun Realty Co., Inc. The jury, in apportioning damages, found Fraydun to be 25% responsible for the happening of the accident and Schogel to be 75% responsible.

This judgment must be reversed and a new trial ordered. The charge by the trial court, in effect, took away from the jury its right to determine whether a safety belt was needed under the circumstances and decided that it was required as a matter of law. This was error.

The court erred when it equated the failure to provide plaintiff with a safety belt with a per se violation of subdivision 1 of section 240 of the Labor Law. Subdivision 1 of section 240 provides in pertinent part: "All contractors and owners and their agents * * * in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, *and other devices* which shall be so constructed, placed and operated as to give proper protection to a person so employed" (italics added).

The term "other devices" referred to *supra* does not automatically embrace the use of a safety belt. Had the Legislature intended to mandate the use of safety belts within the ambit of subdivision 1 of section 240 of the Labor Law, it could easily have so provided (cf. Labor Law, § 202).

The court clearly erred when it charged various inapposite sections of the Industrial Code to support plaintiffs' claim of absolute liability pursuant to subdivision 1 of

section 240 of the Labor Law. This error is made manifest by the jury's specific findings that plaintiff was provided with a proper and safe ladder for the work but was not supplied with a safety belt. The failure to provide such a safety belt would not, standing alone, establish subdivision 1 of section 240 liability since such an alleged dereliction would establish nothing more than a violation of the Industrial Code which, at most, is some evidence of negligence. The Court of Appeals has stated "the principle, long and firmly established in New York, that the violation of a rule of an administrative agency or of an ordinance of a local government, lacking the force and effect of a substantive legislative enactment, is 'merely some evidence which the jury may consider on the question of defendant's negligence (*Teller v Prospect Hgts. Hosp.*, 280 NY 456, 460).'" (*Long v Forest-Fehlhaber,* 55 NY2d 154, 160.)

Section 240 of the Labor Law is a "self-executing statute", containing its own specific safety measures, which does not defer to the rule-making authority of the Board of Standards and Appeals (*Long v Forest-Fehlhaber, supra,* at p 160). Conversely, a violation of the Industrial Code does not impute absolute liability, but is only some evidence of negligence.

The predicate for the erroneous charge by the trial court that the failure to provide a safety belt would establish absolute liability under subdivision 1 of section 240 was based on the mistaken belief that 12 NYCRR 23-1.7 (b) was applicable to the facts herein. Thus, the court charged: "The Plaintiff is claiming that the failure to provide the Plaintiff with a safety belt and the safety belt is a device within the meaning and scope of section 240 of the Labor Law, as defined by the Industrial Code, and the Plaintiff's claim that the owner, and incidently [*sic*] of the Third-Party Defendant, failure to provide a safety belt, in accordance with the Industrial Code was a violation of Section 240 so far as the owner is concerned, and negligence so far as the Third-Party Defendant is concerned, as well as also a violation of the Labor Law."

The court further stated in its instructions: "It is also not disputed, it is conceded that neither the Defendant nor the Third-Party Defendant provided the Plaintiff with a safety

belt in the doing of this work, and that there was no safety belt there, and the Court advises you that if you find that the Defendant Fraydun Realty Co. violated that duty imposed by Section 240 of the Labor Law * * *".

12 NYCRR 23-1.7 (b) was not intended to apply to the instant situation. Rule 23 of the Industrial Code, speaks in its definitional section of the "cleaning of the *exterior* surfaces including windows" (12 NYCRR 23-1.4 [b] [13]; emphasis added). In 12 NYCRR 21.2 (h) (referable to window cleaners), "from the inside" is defined as "a position in which all of the cleaner's body except one arm is interior to the window sash." And "from the inside" is analogized to "safe surfaces" in 12 NYCRR 21.5 provided that the laborer is not working more than six feet above the floor. Under these sections, therefore, there is no requirement for a safety belt. Thus, a fortiori, 12 NYCRR 23-1.7 (b) was never intended to apply to the situation where a worker is engaged in installing storm windows from the interior portion of an apartment building fully erected and habitable. Hence, it was error for the court to charge 12 NYCRR 23-1.7 (b) (cf. *DeHaen v Rockwood Sprinkler Co. of Mass.,* 258 NY 350, 353).

Even assuming that section 23-1.7 (b) was applicable to the facts herein, its violation, as noted *supra,* would only be some evidence of negligence to which defendants could offer proof that safety belts could not be used because of the nature of the work or that such safety belts were not customarily used when working inside an apartment. However, by its erroneous evidentiary rulings, the court prevented such attempted showing by defendants.

Accordingly, the judgment of the Supreme Court, New York County (HILDA SCHWARTZ, J.), entered on May 14, 1982, after a jury trial, should be reversed, on the law, and a new trial ordered, with costs to abide the event.

KUPFERMAN, J. P., SILVERMAN, MILONAS and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on May 14, 1982, unanimously reversed, on the law, and a new trial ordered, with costs to abide the event.