SPYROS KALOFONOS et al., Respondents, v STATE OF NEW YORK, Appellant.

Second Department, November 19, 1984

### APPEARANCES OF COUNSEL

*Jones, Hirsch & Bull* (*Gary D. Centola* of counsel), for appellant.

*Lipsig, Sullivan & Liapakis* (*Norman E. Frowley* and *Pamela Anagnos Liapakis* of counsel), for respondents.

### OPINION OF THE COURT

MOLLEN, P. J.

The primary issue on this appeal is whether the State of New York can be held strictly liable in damages, pursuant to subdivision 1 of section 240 of the Labor Law, for an employee's

injuries proximately caused by an owner's or contractor's failure to provide a safety rail on scaffolding used in connection with sandblasting and painting the underside of a State-owned bridge. We conclude, as did the Court of Claims, that, under the facts and circumstances present in the case at bar, the State can be held strictly liable for the employee's injuries. Accordingly, there should be an affirmance.

The facts of this case have been set forth by the Court of Claims (*Kalofonos v State of New York,* 115 Misc 2d 692) and need only be restated briefly. In March, 1978, Spyros Kalofonos (hereinafter referred to as the claimant), an experienced sand-blaster and bridge painter, was employed by J & T Painting Company (J & T). J & T had a contract with the State (the defendant) to perform bridgework on the Seaford-Oyster Bay Expressway. The work included sandblasting, priming, and painting; among the expressway bridges to be worked on was the Waverly Avenue overpass (the overpass).

Work on the overpass began on March 24, 1978. The claimant and his helper positioned their flatbed truck underneath the bridge. A scaffold, consisting of a metal frame with vertical supports, on which two wooden planks were horizontally placed, was assembled and mounted on the truck. The two wooden planks, placed side-by-side, created a walkway 22 to 24 feet long and approximately 5 feet wide, which stood 10 to 11 feet above the pavement, with the end of the platform extending some five feet beyond the vertical support. In addition, a bar, referred to by the claimant as a "roller scaffold", crossed the platform to connect the two vertical supports at each end. It is not clear from the evidence whether the bar lay across the platform or, if it were raised above the platform, to what extent. What is clear is that there were no railings around the platform or scaffold; ropes or toeboards were not provided and the claimant did not use a harness while working on the overpass.

At approximately 10:00 A.M., the claimant began sandblasting. The equipment consisted of a hose fitted with a nozzle and powered by a compressor. When activated, the apparatus exerted some 120 pounds of pressure against the claimant and weighed 20 to 30 pounds. While working, the claimant wore a hood, similar to a welder's helmet, which extended past his shoulders to protect his face and neck. To operate the sandblasting apparatus, the claimant held the nozzle and pointed it towards the underside of the bridge, sometimes holding it straight out in front of him and sometimes holding it directly above his head. The claimant's helper turned the apparatus on

and off and periodically moved the truck so that different parts of the bridge could be sandblasted. At about noon, the claimant, who was sandblasting beyond the vertical support, suddenly fell 11 feet to the pavement, thereby sustaining serious physical injuries.

The claimant and his wife instituted these claims to recover damages, *inter alia,* for physical injuries and loss of consortium. Liability was initially predicated on section 240 of the Labor Law and rule 23 of the Industrial Code of the State of New York (12 NYCRR 23-5.1 [j] [l]). At trial, liability was additionally predicated on a theory of negligence pursuant to subdivision 6 of section 241 of the Labor Law and common-law negligence as codified in section 200 of the same statute (see *Kalofonos v State of New York,* 115 Misc 2d 692, 694, *supra*). The Court of Claims found liability under subdivision 1 of section 240 of the Labor Law and subdivision 6 of section 241 of the Labor Law but not under section 200 of the Labor Law or common-law negligence. The court awarded the claimant the principal sum of $525,000 as compensation for "his injuries, both physical and psychological, his medical expenses and his past, present and future pain and suffering and loss of earnings" (*Kalofonos v State of New York, supra,* p 703). The court also awarded the claimant's wife the principal sum of $25,000 to compensate her "for her past, present and future loss of consortium" (*Kalofonos v State of New York, supra,* p 703).

Pursuant to section 240 of the Labor Law, an owner or contractor has an absolute duty to provide safe scaffolding. The failure to do so renders the owner or contractor liable as a matter of law for any resulting injuries, irrespective of whether the owner or contractor controlled, directed or supervised the worksite (see *Haimes v New York Tel. Co.,* 46 NY2d 132; *Crawford v Leimzider,* 100 AD2d 568, 569; *DaBolt v Bethlehem Steel Corp.,* 92 AD2d 70, 74, mot for lv to app den and app dsmd 60 NY2d 701; *Sullivan v Held,* 81 AD2d 663). We note with interest that the so-called Illinois Scaffold Act (Ill Ann Stats, ch 48, § 60, former § 69 [Smith-Hurd, 1969]), which closely resembles subdivision 1 of section 240 of the Labor Law, has also been interpreted "as one imposing absolute liability in civil cases upon each of the persons to whom it is expressly applicable" (*Pankey v Walker & Sons,* 167 F Supp 609, 613).

In relevant part, section 240 provides:

"1. All contractors and owners and their agents * * * in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure *shall furnish or erect, or cause*

*to be furnished or erected for the performance of such labor, scaffolding* * * * *and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed* * * *

"2. Scaffolding or staging more than twenty feet from the ground or floor, swung or suspended from an overhead support or erected with stationary supports * * * shall have a safety rail of suitable material properly attached, bolted, braced or otherwise secured, rising at least thirty-four inches above the floor or main portions of such scaffolding or staging and extending along the entire length of the outside and the ends thereof, with only such openings as may be necessary for the delivery of materials. Such scaffolding or staging shall be so fastened as to prevent it from swaying from the building or structure" (emphasis added).

The Legislature, therefore, has distinguished between scaffolding which is more than 20 feet in height, and scaffolding, as in the case at bar, which is 20 feet in height or less. The owner or contractor is mandated to provide safety rails when the former is used; the law requires the owner or contractor to "furnish * * * scaffolding * * * and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed" when scaffolding 20 feet in height, or less, is used.

The decisional law of this State has long recognized that the Labor Law section requiring an owner or contractor to provide safe scaffolds "is to be liberally construed to accomplish its beneficient purpose; that is, the better protection of workmen engaged in certain dangerous employments" (*Bohnhoff v Fischer*, 210 NY 172, 174). In *Lagzdins v United Welfare Fund* (77 AD2d 585, 588), this court expressly reaffirmed this view with regard to the purpose of subdivision 1 of section 240 of the Labor Law (cf. *Sarnoff v Charles Schad, Inc.*, 22 NY2d 180). To this end, what constitutes "proper protection" within the purview of subdivision 1 of section 240 necessarily turns upon the particular facts and circumstances of each case (see *Brant v Republic Steel Corp.*, 91 AD2d 841). In our view, the circumstances present herein, including the use of heavy and bulky equipment, which, when activated, exerted 120 pounds of pressure against the operator, who was working on a scaffold some 11 feet up from the pavement, justify the imposition of absolute liability for the injuries proximately caused by an owner's or contractor's failure to provide a security rail on such scaffolding (see *Weber v State* 53 NYS2d 598).

The dissenter argues that "[t]he absence of safety rails cannot be *the* basis for absolute liability because * * * the scaffold in

question was concededly less than 20 feet in height" (p 81; emphasis added). The dissent, however, fails to distinguish between liability under subdivision 1 of section 240 of the Labor Law and liability under subdivision 2 of section 240. We conclude, as did the Court of Claims, that under all the attendant circumstances, the State failed "to give proper protection to a person so employed" (Labor Law, § 240, subd 1), and, further, that the State would have satisfied its statutory obligation had it provided safety devices, including a safety rail. As previously suggested, the statute permits, under subdivision 1, in a proper case, the imposition of liability where an owner or contractor fails to provide a safety rail for scaffolding 20 feet in height or less.

Nor is the dissent correct in asserting that use of rule 23 of the Industrial Code (12 NYCRR 23-5.1) "as a standard under section 240 of the Labor Law amounts to an impermissible end run around *Long v Forest-Fehlhaber* ([55 NY2d 154,] *supra*)" (p 81). The dissent seems to be suggesting that the provisions of rule 23 were somehow improperly incorporated into subdivision 1 of section 240 of the Labor Law in the case at bar.

Anticipating this argument, the Court of Claims stated that the afore-mentioned rule "is not *the* basis for the [findings of liability pursuant to subdivision 1 of section 240 of the Labor Law]. Rather, we have considered it as some evidence of the standards extant in the construction industry * * * just as we have considered the other evidence relevant to the issue of proper protection * * * Such in no way constitutes any deferral of the statutory standard to administrative rule * * * Only the usual and proper consideration of relevant evidence is involved" (*Kalofonos v State of New York, supra,* p 697). While it is true, as the dissent points out, that section 240 of the Labor Law is "a self executing statute which, containing its own specific safety measures, does not defer to the rule-making authority of the board" (*Long v Forest-Fehlhaber, supra,* p 160), none of the cases cited by the dissent, including *Long,* can be read to prohibit the consideration of rule 23, or any other evidence, in determining whether there was compliance with that portion of subdivision 1 of section 240 which reads as follows: "scaffolding * * * and other devices which shall be so constructed, placed and operated as to give *proper protection* to a person so employed" (emphasis added). The fact that liability is imposed pursuant to this section of the Labor Law "without regard to principles or concepts of negligence" (*Crawford v Leimzider,* 100 AD2d 568, 569, *supra*), hardly translates into a rule that precludes the use of extrinsic

evidence to identify the contours of the statutory language quoted above (see McKinney's Cons Laws of NY, Book 1, Statutes, § 120 *et seq.*).

With regard to the issue of proximate causation, the dissenter's view is that, because Mr. Kalofonos "climbed over the vertical support at the end of the scaffold and chose to work on the very edge of the platform, outside of the vertical supports, where he fell * * * even if there had been a horizontal safety rail extending from each vertical support, Kalofonos' fall would not have been prevented since he was, by his own volition, outside of the vertical supports" (p 82). The short answer to this position is that the trier of facts was entitled to find that, had the platform, including that portion extending beyond the vertical supports, been circumscribed by a safety rail, which, apparently, a proper regard for the safety and protection of the workers on this project required, the fall would have been prevented. Furthermore, it is obvious that had the "roller scaffolds" provided been greater in height than the ones actually provided, the claimant would not have been able to "climb * * * over the vertical support", thereby providing him with meaningful protection.

■ Finally, we note our disagreement with the State that the damage award was excessive. Stripped to its essentials, the State's argument is that the trier of facts (in this case, the court) should have credited the testimony of the State's expert, rather than that of the claimant's expert. Quite obviously, questions pertaining to credibility are best left to the trier of facts (see *Matter of Lewinson v Crews,* 28 AD2d 111, 113, affd 21 NY2d 898), and we find no basis in the record for concluding that the claimant's expert was unworthy of belief (see *People v Garafolo,* 44 AD2d 86, 88). Rather, we conclude that the record amply supports the damage award and that it was not, as argued by the State, based upon " 'sympathy, passion, prejudice or corruption' ".*

Accordingly, the judgment of the Court of Claims, awarding the principal sums of $525,000 and $25,000 to the claimant and his wife, respectively, should be affirmed.

---

\* In light of our conclusion that, under the circumstances at bar, the State may be held strictly liable, pursuant to subdivision 1 of section 240 of the Labor Law, for the damages sustained by the claimant and his wife proximately caused by the failure of the owner or contractor to provide safety rails on the scaffolding, we need not reach the additional issues raised by the State, namely: whether liability could be predicated on subdivision 6 of section 241 of the same statute and whether the State should have been permitted to amend its answer to add as an affirmative defense comparative fault.

TITONE, J. (dissenting). Claimant Spyros Kalofonos (Kalofonos) standing on a platform beyond the vertical supports — an area known to him to be dangerous — fell backwards and sustained serious injuries when he struck the pavement below. The Court of Claims (115 Misc 2d 692) and now the majority of this court cast the State in absolute liability for the accident. In my view, this determination rests upon an erroneous construction of section 240 of the Labor Law. Therefore, I must dissent.

The absence of safety rails cannot be the basis for absolute liability because the statute itself provides that safety rails are required only on scaffolds "more than twenty feet from the ground" (Labor Law, § 240, subd 2) and the scaffold in question was concededly less than 20 feet in height (*Ryan v Cenci,* 95 AD2d 963, 964). While rule 23-5.1 of the Industrial Code (12 NYCRR 23-5.1 [j] [1]) states that scaffolds seven feet or more should have their open sides equipped with safety railings, this standard may not be employed in a section 240 of the Labor Law case.

Unlike subdivision 6 of section 241, section 240 is a "self-executing statute", containing specific standards which do not defer to the rule-making authority of the Board of Standards and Appeals (*Long v Forest-Fehlhaber,* 55 NY2d 154, 160; see, also, *Bland v Manocherian,* 93 AD2d 689, 693). Had the Legislature intended to mandate safety rails on scaffolds of less than 20 feet or less in height, it would have done so (*Bland v Manocherian, supra,* p 692). The failure to provide a safety rail, therefore, "would not, standing alone, establish subdivision 1 of section 240 liability since such an alleged dereliction would establish nothing more than a violation of the Industrial Code which, at most, is some evidence of negligence" (*Bland v Manocherian, supra,* p 693; see, also, *Monroe v City of New York,* 67 AD2d 89).

Use of the Industrial Code as a standard under section 240 of the Labor Law amounts to an impermissible end run around *Long v Forest-Fehlhaber (supra),* which holds that in an action under subdivision 6 of section 241 of the Labor Law, comparative fault is a defense to a violation of an Industrial Code rule. Since negligence principles are foreign to a section 240 action (e.g., *Crawford v Leimzider,* 100 AD2d 568, 569; *Rea v Elia Bldg. Co.,* 79 AD2d 1102), I cannot subscribe to the majority's thesis of equating "negligence" with "absolute liability". To be sure, a failure to comply with an Industrial Code provision is " 'some evidence * * * on the question of defendant's negligence' * * * [but] violation of the Industrial Code does not impute absolute liability" (*Bland v Manocherian, supra,* p 693). Whether the

duty of care mandated by statute has been breached perforce depends upon the facts of the peculiar case, but, when strict liability is legislatively imposed, I submit that the standard of care must have its roots either in the statute itself or in decisional law (see Prosser and Keeton, Torts [5th ed], § 36, p 227; Restatement, Torts 2d, § 285, Illustration 4; § 282, Comment *f;* 1A Warren, Negligence [2d ed], Statutes and Ordinances, §§ 7.06, 9.02; cf. *Major v Waverly & Ogden,* 7 NY2d 332; *Crawford v Leimzider, supra,* p 569; *La France v Niagara Mohawk Power Corp.,* 89 AD2d 757, app dsmd 58 NY2d 747).

I also have difficulty in perceiving how the failure to supply a safety rail was the proximate cause of the accident (see *Mack v Altmans Stage Light. Co.,* 98 AD2d 468; *La France v Niagara Mohawk Power Corp., supra*). At some point during the performance of his work, rather than simply moving the truck, Kalofonos climbed over the vertical support at the end of the scaffold and chose to work on the very edge of the platform, outside of the vertical supports, where he fell. Obviously, even if there had been a horizontal safety rail extending from each vertical support, Kalofonos' fall would not have been prevented since he was, by his own volition, outside of the vertical supports (see *Smith v Hooker Chems. & Plastics Corp.,* 89 AD2d 361 [Simons, J. P.], app dsmd 58 NY2d 824).

Nor is there any evidentiary support for the assertion that other "devices", such as safety nets, harnesses or the like, were needed to supply Kalofonos with "proper protection". There is no testimony that such devices were necessary or were utilized by others in the industry. In addition, although rope was available to fashion a safety line, the State cannot be faulted for Kalofonos' failure to use it (*Smith v Hooker Chems. & Plastics Corp., supra*). More important, "[h]ere, there was no failure of any device required by subdivision 1 of section 240"; hence, the State is entitled to dismissal of that cause of action (*La France v Niagara Mohawk Power Corp.,* 89 AD2d 757, 758, *supra*).

The Court of Claims also predicated liability on subdivision 6 of section 241 of the Labor Law. While, contrary to the State's argument, that section is not limited to building construction accidents (e.g., *Maher v Atlas Tr. Mix Co.,* 104 AD2d 591; *Copertino v Ward,* 100 AD2d 565; *Celestine v City of New York,* 86 AD2d 592, 593, affd 59 NY2d 938; *Page v State of New York,* 73 AD2d 479, affd 56 NY2d 604), and the proof could support the imposition of liability and proximate cause under such a theory (*La France v Niagara Mohawk Power Corp.,* 89 AD2d 757, 758, *supra; Lagzdins v United Welfare Fund,* 77 AD2d 585), I believe that a new trial is in order.

As indicated, in an action based on subdivision 6 of section 241 of the Labor Law, comparative fault is a defense (*Long v Forest-Fehlhaber, supra; Monroe v City of New York, supra*) and there is evidence in this record tending to establish negligence on Kalofonos' part. Since Kalofonos was permitted to pursue at trial a claim pursuant to subdivision 6 of section 241 of the Labor Law, which was at variance with his bill of particulars, the State should have been permitted to amend its answer to add an affirmative defense of comparative fault (CPLR 3025, subd [b]; see, e.g., *Fahey v County of Ontario,* 44 NY2d 934; *Murray v City of New York,* 43 NY2d 400, 405). Contrary to the holding of the Court of Claims, the amendment could not have prejudiced the claimants as, irrespective of the statutory theory being pursued, the facts regarding the accident were the same. On the other hand, the prejudice to the State is manifest as it was precluded from fully presenting its defense (see *Edenwald Contr. Co. v City of New York,* 60 NY2d 957, 959; *McCaskey, Davies & Assoc. v New York City Health & Hosps. Corp.,* 59 NY2d 755, 757).

For these reasons, the judgment appealed from should be reversed and a new trial granted.

LAZER, O'CONNOR and NIEHOFF, JJ., concur with MOLLEN, P. J.; TITONE, J., dissents and votes to reverse the judgment appealed from and grant a new trial, with an opinion.

Judgment of the Court of Claims, entered October 5, 1982, affirmed, with costs.