FLOYD J. HEATH et al., Respondents, v SOLOFF CONSTRUCTION, INC., Appellant, et al., Defendants.

SOLOFF CONSTRUCTION, INC., Third-Party Plaintiff-Respondent-Appellant, v SOLVAY IRON WORKS, INC., Third-Party Defendant-Appellant.

Fourth Department, April 5, 1985

**APPEARANCES OF COUNSEL**

*Davoli, McMahon & Kublick, P. C. (Jan S. Kublick* of counsel), for appellant.

*Sugarman, Wallace, Manheim & Schoenwald* (*Donald Schoenwald* of counsel), for respondent-appellant.

*Terry D. Smith* for respondents.

### OPINION OF THE COURT

DILLON, P. J.

This action was brought by plaintiff Floyd Heath, an ironworker employed by third-party defendant Solvay Iron Works, Inc. (Solvay), against defendant Solomon Development Co., doing business as Syracuse Mall Associates (Syracuse), as owner, and defendant Soloff Construction, Inc. (Soloff), as general contractor, to recover damages for personal injuries suffered by him when he fell from an elevated beam while working on a building construction project. Plaintiff Lori Heath's cause of action is derivative.

Plaintiffs' claim of liability is based upon an alleged violation of Labor Law § 240 (1). The third-party claim against Solvay is based upon an indemnification agreement contained in the subcontract between Soloff and Solvay for the erection of structural steel. Special Term granted summary judgment to plaintiffs against both Syracuse and Soloff on the issue of liability and, in turn, granted Syracuse and Soloff summary judgment over against Solvay. Syracuse, Soloff and Solvay appeal from that part of the order granting summary judgment to plaintiffs, and Solvay also appeals from that part of the order granting summary judgment in the third-party action. We affirm.

In addition to contract documents, plaintiffs submitted on the motion for summary judgment several affidavits as well as excerpts of relevant testimony taken at examinations before trial. Floyd Heath's version of the accident is undisputed, and is supported by the affidavit of his co-worker Lyle Emmert and the testimony of his foreman William Reed. Heath asserts:

"The accident occurred when I fell to the ground from a horizontal steel beam situated approximately 17 feet above ground level. I had walked out onto this beam, which was only three or four inches in width, at the direction of my foreman to unhook a choker that had been used to support the beam as it was placed into position by a crane.

"I detached the choker and was holding onto the hook of the crane to balance myself as I started to stand up when the crane operator, suddenly and without any signal being given, raised the hook, causing me to lose my balance and fall off the beam."

Mark Soloff, the officer in charge of Soloff's local operations, testified that Soloff had provided no safety devices for erection of

the steel. John Maestri, president of Solvay, stated that no safety devices had been provided because "none was required", and further testified that the beam on which Heath was working ran parallel to an existing building and was within inches of its wall.

William Reed testified that he directed Heath "to disconnect the choker from the beam" and also directed that "when he stood up, to use the wall to get back to his point that he came from." When asked if there was any safety equipment available on the job site for use by Solvay employees, Reed responded "There was none required". He acknowledged the feasibility of attaching hooks to the wall or the parapet roof of the adjacent building from which safety lines could be hung, but asserted that "life-lines and parapet hooks were all unnecessary" because there were two ladders on the premises which would extend beyond the top of the beam.

Lyle Emmert asserted in his affidavit that it was "standard procedure" and "accepted ironworker's practice" to walk out onto the beam to detach a choker. He affirmed the presence of two ladders and further stated: "At the time of Floyd's accident Dwane Harrington was on one of the ladders, and it was not available to Floyd. I saw that the 2nd ladder was about 30 to 40 feet east of where Floyd was working & it was tied off to iron & was not available to Floyd for him to use."

The assertions by witnesses Soloff, Maestri and Reed that safety equipment was not available on the job and that "none was required" are understandable when viewed in light of the argument made by all defendants at Special Term that since the plaintiff Floyd Heath was working at a level less than 20 feet above the ground, Labor Law § 240 (1) was inapplicable. That argument, of course, was properly found to be without merit (see, Wright v State of New York, __ AD2d __; Kalofonos v State of New York, 104 AD2d 75) and has been abandoned on appeal. In this court, all defendants for the first time proceed upon the theory that the proof submitted to Special Term concerning the presence or availability of two ladders at the job site raises the issue of whether the statute was violated. In our view, no issue of fact is presented.

Labor Law § 240 is entitled "Scaffolding and other devices for use of employees". Subdivision 1 thereof provides: "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or

erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

It is well settled that the duty imposed by the statute is nondelegable and where a violation of that duty proximately causes injury to a member of the class for whose benefit the statute was enacted, the owner and general contractor are absolutely liable (*Haimes v New York Tel. Co.,* 46 NY2d 132). The obligation to ensure safe practices at construction sites is not to be imposed upon subcontractors (*see,* L 1969, ch 1108, §§ 1, 3). That is so because over-all compliance with safety standards is best achieved "by placing primary and inescapable responsibility on owners and general contractors rather than on their subcontractors who, often occupying an inferior economic position, may more readily shortcut on safety unless those with superior interests compel them to protect themselves." (*Haimes v New York Tel. Co., supra,* p 137; *see also,* 1969 NY Legis Ann, at 407, 408.)

In making the argument that it could be found that the ladders were available to Heath and that he decided not to use them, defendants rely principally upon this court's decision in *Smith v Hooker Chems. & Plastics Corp.* (89 AD2d 361, *appeal dismissed* 58 NY2d 824).[1] That reliance is misplaced. The pivotal factual predicate for the *Smith* decision was the proof that safety devices had been "constructed, placed and operated" for the work to be performed as required by the statute (Labor Law § 240 [1]). As the court said in *Smith,* the issue presented extended beyond any "failure" of an owner or contractor "to supply safety devices and *see to their proper placement and operation*" (p 365; emphasis supplied). It was in that light that the court declined to impose upon the owner a continuing duty of supervision to "insist that a recalcitrant worker use the devices" (p 365). The case did not, and obviously could not, negate that part of the statute which imposes the duty upon contractors, owners and agents to ensure that safety devices "be so constructed, placed and operated as to give proper protection to a person so employed." In that regard, it is significant that the decision in *Smith* did not reject the holding in *Cardile v D'Ambrosia* (72 AD2d 544) that the owner and contractor are charged with a duty under the statute to ensure proper placement of a

---

1. On January 18, 1983, the appeal was dismissed by the Court of Appeals *sua sponte* upon the ground that this court's order did not finally determine the action within the meaning of the Constitution.

ladder and having failed to do so, they were absolutely liable for plaintiff's injuries. Indeed, we have recently cited *Cardile* as authority for that principle (*see, Larson v Herald,* 96 AD2d 1137).[2]

Nor should *Smith* (*supra*) be read to impose the burden upon the worker to guarantee his own safety by requiring that he construct, place or operate the equipment in a proper manner.[3] If that were required, the statute would be of little or no benefit to the worker and the legislative purpose would be frustrated. It is consistent with the statutory purpose, therefore, that an injured worker's contributory fault or assumption of risk is not a defense to the imposition of absolute liability (*Evans v Nab Constr. Corp.,* 80 AD2d 841, *lv dismissed* 54 NY2d 785; *see, Crawford v Leimzider,* 100 AD2d 568).

It is true, of course, that summary judgment is a drastic remedy which should not be granted when there is any significant doubt as to the existence of a triable issue of fact. Where, however, one seeking summary judgment tenders evidentiary proof in admissible form establishing his cause of action sufficiently to warrant the court as a matter of law in directing judgment in his favor, the burden falls upon the opposing party to show, also by evidentiary proof in admissible form, that there are facts sufficient to require a trial of any issue of fact, or at least to demonstrate acceptable excuse for the failure to do so (*Zuckerman v City of New York,* 49 NY2d 557, 562).

Here, by showing that at the time of the injury he was doing construction work involving the danger of a fall from an ele-

---

**2.** The principle is consistent with the holding implicit in *Haimes v New York Tel. Co.* (46 NY2d 132) that the failure to secure a ladder "against slippage by any mechanical or other means whatsoever" (p 134) constituted a violation of the statute imposing absolute liability upon the owner (*see, Larabee v Triangle Steel,* 86 AD2d 289, 291-292). To the extent that the footnote reference in *Smith* (89 AD2d 361, 365, n 4) to the footnote comment in *Haimes* (46 NY2d 132, 134-135, n 2) states a contrary conclusion, it should be disregarded. Also to be disregarded is the final sentence of the *Smith* footnote. It is premised upon the statement that "the [*Haimes*] action was remitted for a new trial". Such was not the case. The action was one "for wrongful death * * * grounded on an alleged violation of section 240 of the Labor Law" (*Haimes v New York Tel. Co., supra,* p 134). The trial under review in *Haimes* was on the issue of liability only. In reversing the judgment dismissing the complaint and ordering that judgment be entered against defendant on the issue of liability, the Appellate Division remitted the matter only "for further proceedings to assess damages" (*Haimes v New York Tel. Co.,* 59 AD2d 813, 814). The Court of Appeals affirmed that order.

**3.** Thus in *Kalofonos v State of New York* (104 AD2d 75), the majority correctly ignored the intendment of the dissenter's observation, made in misplaced reliance upon *Smith,* that "although rope was available to fashion a safety line, the State cannot be faulted for Kalofonos' failure to use it" (p 82).

vated height, Heath demonstrated that subdivision (1) of section 240 was applicable (*Brant v Republic Steel Corp.*, 91 AD2d 841). His evidence, and that of others having knowledge of the event, proved that the owner and contractor violated the statute by having failed to provide him with safety devices and that the violation was the proximate cause of his injury (*see, Joyce v Rumsey Realty Corp.*, 17 NY2d 118).

■ Defendants made no showing to the contrary. They fail even to allege that Heath refused to use a ladder which had been properly placed as required by the statute.[4] Their argument erroneously presumes that Heath was required to refuse the directions given him by his superior until such time as either he or another procured and placed a ladder for his use in disconnecting the choker from the elevated beam. To view the mere presence of ladders in the vicinity as creating an issue of fact in this case would necessarily be to shift to a worker the burden which the statute pointedly places upon the owner and contractor. We think the statute means what it says and we hold, therefore, that an owner and contractor do not fulfil their statutory obligation and thereby escape the imposition of absolute liability merely by demonstrating that there was present somewhere at a job site a ladder which might have been used by a worker for the safer performance of his assigned work. The statute requires more than that and so must we. It follows that summary judgment on the issue of liability was properly granted to plaintiffs (*Brant v Republic Steel Corp.*, 91 AD2d 841, *supra*).

■ The grant of summary judgment over against Solvay requires little comment. It was mandated under that part of the indemnity agreement contained in paragraph 11 of the subcontract as follows: "Subcontractor agrees to defend, indemnify and hold the Contractor and the Owner wholly harmless from any damages, claims, demands or suits by any person or persons, arising out of or resulting from the execution of the work provided in this subcontract or occurring in connection therewith, excluding liability for negligence of the Contractor or Owner, except in connection with general supervision of work performed by the Subcontractor."

Indemnification agreements of the kind we see here are not disfavored in the law (*Allen v Cloutier Constr. Corp.*, 44 NY2d 290) and we will not ascribe to them a strained or artificial meaning (*O'Connor v Serge Elevator Co.*, 58 NY2d 655).

---

4.   We reject language tending to erode the statutory burden upon owners and contractors to see to it that ladders are so constructed, placed and operated as to give proper protection to workers (*see, e.g., McGrath v Baranello & Sons*, 107 AD2d 675; *Zimmer v Chemung County Performing Arts*, 102 AD2d 993).

Solvay claims that there is some question of negligence on the part of Soloff which would relieve Solvay of liability under the agreement. That cannot be, however, since it was not intended that Soloff would participate in the work and the evidence that it did not is undisputed. There is no basis here for Solvay's reliance on *Brant v Republic Steel Corp.* (91 AD2d 841, *supra*). There we denied summary judgment on the third-party claim solely because it could be found that Republic's active conduct in dropping iron ore pellets on the floor of the elevated workplace contributed to plaintiff's accident and injury. Nothing like that is present here.

As we have already said, the liability of Syracuse and Soloff arises from the violation of a statute creating an absolute, nondelegable duty (*Allen v Cloutier Constr. Corp., supra; Monroe v City of New York,* 67 AD2d 89).

Accordingly, the order should be affirmed.

DOERR, J. (concurring). I concur fully in the majority opinion, but write separately only to express the view that the majority opinion effectively overrules *Smith v Hooker Chems. & Plastics Corp.* (89 AD2d 361) and that such a holding should be explicit, rather than implicit.

In *Smith v Hooker Chems. & Plastics Corp. (supra)* we denied plaintiff summary judgment because there was a version of the facts by which plaintiff was injured due to his own choice to go up on a roof without first putting in place a safety line, which would then attach to his safety belt. The express holding in *Smith* was that the owner and contractor have no duty to see that a recalcitrant worker uses safety equipment provided. Implicit in that holding, however, was the premise that the employee himself and not the owner had the duty to take a safety line, which was available on the job site, and attach it to the roof.* The majority opinion today clearly expresses the view that it is the owner and general contractor, and not the employee, who have that duty. Under the holding today, the plaintiff in *Smith* would be denied recovery only if the safety line had already been in place and the employee had then declined to attach it to his safety belt.

I agree with the view expressed in the majority opinion that the Labor Law imposes upon owners and general contractors the duty of furnishing and placing various devices and that this is a

---

* In *Smith,* plaintiff did not raise the question of whether the owner breached a duty to place devices so as to provide proper protection. Plaintiff's position in *Smith* was that the owner has a duty to ensure that the employee uses safety equipment, a proposition that was properly rejected.

nondelegable duty, which cannot be satisfied merely by furnishing somewhere on the job site devices which might have prevented plaintiff's injuries had they been used.

DENMAN, BOOMER and O'DONNELL, JJ., concur with DILLON, P. J.; DOERR, J., concurs in a separate opinion.

Order affirmed, with costs.