Jerome E. FISKE, Plaintiff,

v.

**CHURCH OF ST. MARY OF THE ANGELS, and the L.C. Whitford Company, Inc., Defendants.**

**CHURCH OF ST. MARY OF THE ANGELS, and the L.C. Whitford Company, Inc., Third Party Plaintiffs,**

v.

**FISKE COMPANY II, INC., Third Party Defendant.**

No. 90–CV–340E.

United States District Court, W.D. New York.

May 19, 1992.

Burgett & Robbins, Dalton J. Burgett (Mary Speedy Hajdu, of counsel), Jamestown, N.Y., for Jerome E. Fiske.

Quinn & McGarry, P.C. (David C. Quinn, of counsel), Buffalo, N.Y., for Church of St. Mary of the Angels.

Michael Pilarz, Buffalo, N.Y., for L.C. Whitford Co., Inc.

Kirchberger & Bender (Thomas W. Bender, of counsel), Buffalo, N.Y., for Fiske Co. II, Inc.

## DECISION AND ORDER

FOSCHIO, United States Magistrate Judge.

## JURISDICTION

The parties filed a consent to proceed before the undersigned on November 4, 1991. This matter is presently before the court pursuant to Plaintiff's motion for summary judgment pursuant to Fed. R.Civ.P. 56(a); Defendant Church of St. Mary of the Angel's ("St. Mary") cross-motion for summary judgment against Plaintiff pursuant to Fed.R.Civ.P. 56(b); and, St. Mary's cross-motion for summary judgment against Defendants L.C. Whitford Company, Inc. ("Whitford") and Fiske Company II, Inc. ("Fiske II") for indemnification pursuant to Fed.R.Civ.P. 56(a).

## BACKGROUND

This diversity action, arising out of a construction accident which occurred on February 27, 1989, was filed by Plaintiff, a Pennsylvania resident, on April 6, 1990, asserting causes of action against St. Mary's and Whitford, both New York corporations, for violations of New York State Labor Law, federal labor law, and negligence. On August 7, 1990, St. Mary's filed a cross-claim against Whitford for contribution and indemnification. St. Mary's also filed, on August 22, 1990, a third-party complaint against Fiske II, a Pennsylvania corporation and Plaintiff's employer, alleging causes of action for contribution and indemnification. On October 12, 1990, Whitford filed a third-party complaint against Fiske II, alleging causes of action for contribution, common law indemnification and contractual indemnification.

On December 20, 1991, Whitford filed a motion to amend its answer to allege that Pennsylvania law applied to Plaintiff's claim, a motion for summary judgment dismissing Whitford from this action based on Pennsylvania law, and a motion for summary judgment against Fiske II for indemnification. Fiske II also filed, on January 21, 1992, a motion to amend its answer to allege that Pennsylvania law applied to this action.

On April 23, 1992, this court issued a Decision and Order holding that New York law applied to this action, therefore denying Whitford's and Fiske II's requests to amend their answers to assert Pennsylvania law. The court further denied Whit-

ford's motion for summary judgment dismissing it from the action on the ground that Pennsylvania law was not applicable and that, under New York law, Whitford may be absolutely liable for Plaintiff's injuries. The court also denied Whitford's motion for summary judgment against Fiske II on the ground that material issues of fact remained as to whether the construction accident at issue in this case resulted from any negligence on the part of Whitford.

Prior to a decision on those motions, on December 27, 1991, Plaintiff filed a motion for summary judgment to establish the liability of St. Mary's and Whitford as an owner and general contractor, respectively, under New York Labor Law § 240. Subsequently, on December 31, 1991, St. Mary's filed a cross-motion for summary judgment against Whitford for indemnification. On March 30, 1992, St. Mary's moved for summary judgment against Plaintiff on the ground that Plaintiff willfully refused to use the safety equipment provided to him, and therefore, St. Mary's was not under the statute responsible for the accident. On the same day, St. Mary's also brought a motion for summary judgment against Fiske II for indemnification and renewed its motion for summary judgment for indemnification against Whitford.

Oral argument on these motions was heard from counsel relative to the matter on April 27, 1992. At that time, Whitford represented that it would not oppose St. Mary's motion for summary judgment against Whitford for indemnification. In addition, St. Mary's represented that it would be deferring its motion for summary judgment against Fiske II pending the outcome of its summary judgment motion against Plaintiff.

For the reasons as set forth below, Plaintiff's motion for summary judgment

against St. Mary's and Whitford is GRANTED; St. Mary's motion for summary judgment against Plaintiff is DENIED, and St. Mary's motion for summary judgment on the issue of indemnification against Whitford is GRANTED.

## FACTS

On February 27, 1989, Plaintiff, Jerome Fiske, was employed by Fiske II restoring the steeples at St. Mary's Church in Olean, New York. (J.F1. 51, 60).[1] Fiske II had been hired as a subcontractor to perform repairs and restoration at St. Mary's by the general contractor on the job, Whitford, on October 20, 1988. (J.F2. 38–40).[2]

Plaintiff had driven to the work site from Erie, Pennsylvania on the morning of February 27, 1989 and had begun work at 8:00 a.m. (J.F1. 60). During that day, Plaintiff was working on the west steeple of the church, removing stones from the buttress. (J.F1. 60, 64). The area where Plaintiff was working was approximately fifty-seven feet above the ground. See, Affidavit of Daniel Barry, Licensed Land Surveyor, dated April 21, 1992. The work included a reduction or removal of the former upper portion of the buttress, leaving an area of approximately $24'' \times 32''$ for later capping with a pyramid shaped stone. (J.F3. 140–141, 154–155).[3] It was on this small work area that both Plaintiff, and his co-worker and supervisor, Jeffrey Fiske, were working when Plaintiff lost his footing and fell. (J.F3. 154–155).

Subsequent to removing some loose stone from the buttress in the west steeple area, (J.F1. 66), Plaintiff removed his safety belt in anticipation of leaving the area to take an afternoon coffee break and slipped on some loose stone, falling off the steeple to the roof area, a distance of approximately twenty-five feet, and then down to the ground below, an additional distance of ap-

---

1. J.F1. references pertain to the page numbers of the transcript of the deposition of Plaintiff, Jerome E. Fiske, dated June 3, 1991.

2. J.F2. references pertain to the page numbers of the transcript of the deposition of Jack Fiske, President of Fiske Company, Inc., dated June 14, 1991.

3. J.F3. references pertain to the page numbers of the transcript of the deposition of Jeffrey Fiske, Plaintiff's supervisor at Fiske II, dated May 31, 1991.

proximately thirty-two feet, sustaining serious physical injuries. See, Exhibit D, Supplementary Affidavit of David C. Quinn, dated March 26, 1992;[4] Affidavit of Daniel Barry, Licensed Land Surveyor, dated April 21, 1992. Plaintiff was taken by paramedics to a local hospital by helicopter, (J.F1. 68), and was then transferred to St. Vincent's Hospital in Erie, Pennsylvania where he remained for a period of approximately two months. (J.F1. 68–69).

At the time of the accident, Gary James, also an employee of Fiske II, was working on the roof area directly beneath where Plaintiff had been working. (G.J. 108–109).[5] James testified that there was pipe scaffolding around the west steeple area, but that it did not extend around to the southeast corner buttress area where Plaintiff had been removing the stone from the buttresses which formed a part of one of the west steeples. (G.J. 117). James stated that there was also scaffolding called "chimney brackets" around the steeple where Plaintiff was working, but that such scaffolding was above the area from which Plaintiff fell. (G.J. 118). One other type of safety equipment called "spider staging", a suspended "bucket" from which employees worked, was used by the Fiske II workmen in the buttress areas, but James stated that the spider staging was not in use in the buttress area at the time Plaintiff fell because "they were in a rush." (G.J. 123–124). James also testified that there was no scaffolding or safety nets below the buttress from where Plaintiff fell. (G.J. 124).

## DISCUSSION

New York State Labor Law § 240(1) provides that all contractors, owners, and their agents shall furnish and erect or cause to be furnished or erected on building construction, renovation, repair or demolition sites, scaffolding and other devices which will give proper protection to persons employed in such labor. See, N.Y.Labor Law § 240(1) (McKinney 1990).

■ This statute imposes absolute liability upon an owner or contractor for their failure to provide or erect safety devices necessary to give proper protection to a worker who sustains an injury proximately caused by that failure. See, *Zimmer v. Chemung County Performing Art, Inc.*, 65 N.Y.2d 513, 493 N.Y.S.2d 102, 482 N.E.2d 898 (1985). An owner or contractor will be absolutely liable to the injured person despite the fact that such owner or contractor exercised no supervision, control, or direction of work being performed. *Zimmer, supra.* Absolute liability applies even if the person injured by a violation of the statute was a self-employed independent contractor whom the owner or contractor had engaged to perform the work. See, *Haimes v. New York Telephone Co.*, 46 N.Y.2d 132, 412 N.Y.S.2d 863, 385 N.E.2d 601 (1978). Carelessness or negligence by the injured person which may have contributed to the fall is not a defense to an action under New York Labor Law § 240(1). See, *Bland v. Manocherian*, 66 N.Y.2d 452, 497 N.Y.S.2d 880, 488 N.E.2d 810 (1985).

■ A limited exception has been carved out from the general rules of absolute liability under New York Labor Law § 240(1). Owners and contractors are not required to insure that workers use the safety devices provided to them. The statutory protection of the New York Labor Law is not available to workers who refuse to use adequate safety equipment made available for their use. See, *Smith v. Hooker Chemicals & Plastics Corp.*, 89 A.D.2d 361, 455 N.Y.S.2d 446 (1982). However, despite this exception, it is not re-

---

4. Plaintiff gave a statement to an insurance investigator approximately two weeks after his accident while at St. Vincent's hospital. Plaintiff, at oral argument on the instant motions, agreed to accept the statements contained in the insurance investigator's statement as fact for the purposes of this motion only. The transcripts of the depositions taken in preparation of this action reveal that, for purposes of any further proceedings in this action, there is a dispute of fact as to whether Plaintiff was wearing a safety belt at the time of his accident.

5. G.J. references pertain to the page numbers of the transcript of the deposition of Gary James, dated June 14, 1991.

quired that a worker guarantee his own safety by constructing, placing or operating safety equipment in a proper manner as a worker's negligence is not a defense to an owner's or contractor's absolute liability. See, *Heath v. Soloff Construction, Inc.*, 107 A.D.2d 507, 487 N.Y.S.2d 617 (1985). The *Smith* doctrine is only intended to exempt those owners and contractors from liability under the Labor Law from an action brought by a "recalcitrant" employee who unequivocally refuses to use the safety equipment provided for him and then suffers an accident as a result. See, *Smith, supra,* 455 N.Y.S.2d at 449. The exception is, however, limited by case law holding that if an employee is not directed to use the safety equipment made available by an owner or contractor, such employee cannot be held within the exception to Labor Law § 240(1) created by *Smith.* See, *Heath, supra,* 487 N.Y.S.2d at 621 (court stated that defendants' argument that worker was required to refuse to follow his supervisor's work directives until such time as safety equipment was provided was erroneous absent any allegations that the worker refused to use proper safety equipment). See also, *Morehouse v. Daniels,* 140 A.D.2d 974, 529 N.Y.S.2d 722 (1988) (Balio and Lawton, JJ., dissenting) (absent a directive to an employee to use safety equipment, there can be no refusal by the employee to use such equipment).

To be granted summary judgment on the issue of liability under New York Labor Law § 240(1), Plaintiff must show that:

(1) there was a violation of the statute by the owner or contractor, and

(2) the violation was a proximate cause of the Plaintiff's injuries, *i.e.,* it was reasonably foreseeable that the Plaintiff's injuries would result from the violation of the statute.

See, *Walsh v. Baker,* 172 A.D.2d 1038, 569 N.Y.S.2d 298 (1991).

In this case, Plaintiff contends that, even though his safety belt was removed at the time of his fall, no scaffolding or safety nets were provided to the workers where the fall occurred and therefore, both the owner, St. Mary's, and the general contrac-

tor, Whitford, violated the statute. As because of the lack of proper scaffolding Plaintiff fell down the roof onto the ground below, Plaintiff claims that this violation of the Labor Law resulted in Plaintiff's serious personal injuries and, therefore, he is entitled to summary judgment on the issue of liability. Plaintiff asserts that Labor Law § 240(1) requires that safety equipment such as scaffolding or safety nets be provided to persons working at elevated heights and that the availability of a safety belt is not a substitution for the scaffolding. Further, Plaintiff argues that applicable New York State regulations require that scaffolding shall be used at elevated work sites and that such regulations define the obligations of the owner and contractor under the New York Labor Law.

■ Whether proper protection has been provided to workers under Labor Law § 240(1) is an issue of fact. *Zimmer, supra.* In this case, it is undisputed that there was no scaffolding or work platform erected at the level where Plaintiff was working on the west steeple, nor was there scaffolding at the roof level from where Plaintiff fell to the ground below. Plaintiff argues that such lack of scaffolding establishes a clear violation of New York State regulations which require scaffolding at elevated work sites, and accordingly, a violation of the New York Labor Law.

■ New York regulations provide that a ground supported scaffold must be provided to persons who are working on a roof more than twenty feet in height and with a slope of greater than one in four. See, 12 NYCRR 23–1.24(b). It is undisputed that Plaintiff was working at such a height and that the slope of the roof was indeed greater than one in four. See, Affidavit of Daniel Barry, Licensed Land Surveyor, dated April 21, 1992; Affidavit of Russell Vesper, Licensed Professional Engineer, dated April 22, 1992. However, the court notes that, while a breach of regulatory provisions is evidence on the issue of liability, it is not conclusive. See, *Blair v. Rosen–Michaels, Inc.,* 146 A.D.2d 863, 536 N.Y.S.2d 577 (1989). Labor Law § 240 has been held to be a self-executing statute,

containing its own specific safety measures, which do not defer to the rule-making authority of a New York State agency. See, *Zimmer, supra,* 65 N.Y.2d at 522, 493 N.Y.S.2d 102, 482 N.E.2d 898; *Blair, supra,* 536 N.Y.S.2d at 579. Violation of an administrative agency rule is "merely some evidence which the jury may consider on the question of [a] defendant's negligence." *Teller v. Prospect Heights Hospital,* 280 N.Y. 456, 21 N.E.2d 504 (1939). Therefore, the regulatory violation in this case, while it is undisputed evidence of liability for the court to consider, it is not, in itself, conclusive of Defendants' liability in this action. See, *Blair, supra; Kalofonos v. State of New York,* 104 A.D.2d 75, 481 N.Y.S.2d 415, 419 (1984) (consideration of Rule 23 of the New York Industrial Code can be used as evidence in determining whether there was compliance with Labor Law § 240(1)).

■ For purposes of this motion, it is also undisputed that Plaintiff was wearing a safety belt and removed it moments before his fall. In their opposition to Plaintiff's motion for summary judgment, Whitford and St. Mary's vigorously argue that Plaintiff's deliberate removal or "unclipping" and "taking off" of his safety belt just prior to his fall from the steeple falls within the exception to Labor Law § 240(1) created by *Smith.* They assert that Plaintiff's own deliberate action was the proximate cause of the accident, and that, therefore, Plaintiff is not entitled to summary judgment. However, in his statement to the insurance investigator, Plaintiff claimed that he removed his belt for the purpose from descending from the steeple. This statement does not establish that Plaintiff deliberately refused to use the safety belt while working at the elevated site. To the contrary, it shows that Plaintiff was using equipment that had to be removed in order to leave the area. See, *Klien v. General Foods Corporation,* 148 A.D.2d 968, 539 N.Y.S.2d 604 (1989) (defendants held liable to plaintiff who slipped off elevated work platform as he attempted to descend from the work site). The court finds that, even viewing the evidence in the light most favorable to Defendant, this removal of the safety belt at the elevated

area could only be considered a negligent act by the Plaintiff. An injured worker's contributory fault is simply not a defense to the imposition of absolute liability against an owner or contractor under Labor Law § 240 and under the agreed facts pertinent to this motion, where no view of the evidence can support a finding "that the absence of safety devices was not a proximate cause of the injuries," summary judgment is proper. See, *Zimmer, supra,* 493 N.Y.S.2d at 107, 482 N.E.2d at 902.

In finding Defendant St. Mary's and Whitford's argument that the *Smith* doctrine precludes summary judgment in this case unpersuasive, the court concluded that the facts in *Smith* were widely distinguishable. In *Smith, supra,* the plaintiff was reminded of the need for using available safety equipment immediately before returning to the roof area where the fall occurred. A trier of fact could therefore have concluded that the plaintiff's conduct of not using the safety equipment in that case amounted to a wilful and conscious disregard for his own safety constituting a refusal to use available safety devices, thereby exonerating the owner and general contractor from statutory liability. There is no basis for a similar conclusion on the undisputed facts presented in the instant motion.

Additionally, even though safety belts were provided to the workers at the St. Mary's construction site, the court in *Smith v. Cassadaga Valley Central School District,* 178 A.D.2d 955, 578 N.Y.S.2d 747 (1991) held an owner and contractor absolutely liable for a fall from an elevated scaffold, notwithstanding the fact that the employee was not wearing a safety belt that was available to him. The availability of safety devices, such as safety belts, at a job site is insufficient to defeat a plaintiff's entitlement to summary judgment on a Labor Law § 240 claim, absent any claim that the worker refused to use the provided equipment. See, *Smith v. Cassadaga, supra,* 578 N.Y.S.2d at 749. As the same undisputed evidence shows that Plaintiff necessarily was required to unclip his safety belt to descend from the

elevated work site, no such refusal interdicting liability can result.

■ Moreover, Plaintiff argues that even though he was wearing a safety belt, it is required that safety devices in addition to safety belts be provided for worker safety, such as scaffolding as stated in Labor Law § 240(1). Defendants asserted at oral argument that the term "other devices" in the statute contemplated the use of a safety belt as a protective device. However, the term "other devices" contained in Labor Law § 240 "does not automatically embrace the use of a safety belt." *Bland v. Manocherian*, 93 A.D.2d 689, 462 N.Y.S.2d 881 (1983), *aff'd*, 66 N.Y.2d 452, 497 N.Y.S.2d 880, 488 N.E.2d 810 (1985). See also, *Pastoriza v. State of New York*, 108 A.D.2d 605, 484 N.Y.S.2d 832, 834 (1985) (summary judgment motion denied where the details of the work being performed at the time of the accident related to an asserted need for safety belts, lines, and nets not specifically enumerated in the Labor Law). As the First Department stated, "[h]ad the Legislature intended to mandate the use of safety belts within the ambit of Labor Law § 240(1), it could have easily have so provided." *Bland, supra*, 462 N.Y.S.2d at 883. The availability of safety belts alone, therefore, does not relieve contractors and owners of their obligations to afford workers "proper protection" by providing scaffolding or other devices as required by Labor Law § 240(1). If a safety belt, for unknown reasons, failed, there appears to be no doubt as to the liability of the contractor or owner if they had failed to require and install the proper scaffolding for worker protection.

■ The misjudgment by Plaintiff, in unclipping his safety belt before moving to a position within the steeple which provided a means of safe descent, as represented at oral argument, is well within the range of foreseeable worker error excluded as a defense under Section 240. See, *Klien, supra*, 539 N.Y.S.2d at 605 ("fact that plaintiff's own negligence in choosing [a] particular method of descending from the elevat-

ed worksite may have contributed to his accident is immaterial and is not a defense to the imposition of absolute liability [under Section 240]"). To permit this arguably negligent omission by Plaintiff as a defense would, in the words of Presiding Justice Dillon of the Appellate Division, render "the statute ... of little or no benefit to the worker and the legislative purpose would be frustrated." *Heath, supra*, 487 N.Y.S.2d at 621.

■ In this case, the court finds that the absence of scaffolding or a safe work platform[6] at the elevated site fifty-seven feet above the ground is a violation of New York State Labor Law § 240(1). Plaintiff's fall from the elevated work site, which could have been prevented by the use of such safety devices, resulted in serious injuries which were proximately caused by the Section 240 violation, notwithstanding Plaintiff's lack of use of a safety belt. It was reasonably foreseeable that Plaintiff would have been required to get down off the buttress once his work was completed or when a break period was scheduled. See, *Klien, supra*, 539 N.Y.S.2d at 605. Therefore, the court holds that there is no remaining issue of material fact in existence sufficient to require a trial on the issue of Defendants' liability under New York Labor Law § 240(1).

## CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment on the issue of liability under New York Labor Law § 240(1) is GRANTED; St. Mary's motion for summary judgment against Plaintiff is DENIED; St. Mary's motion for summary judgment for indemnification against Whitford is GRANTED.

SO ORDERED.

---

**6.** The court notes that, pursuant to N.Y.Labor Law § 240(2), scaffolding more than twenty feet from the ground also requires a safety rail to be properly attached to the scaffolding.