ROBERT SMITH, Respondent, v HOOKER CHEMICALS & PLAS-
TICS CORP., Defendant and Third-Party Plaintiff-Re-
spondent. STEEL CONTRACTING CORPORATION, Third-
Party Defendant-Appellant.

Fourth Department, November 9, 1982

### APPEARANCES OF COUNSEL

*Maghran, McCarthy & Flynn* (*W. Donn McCarthy* of counsel), for third-party defendant-appellant.

*Smith, Murphy & Schoepperle* (*Victor A. Oliveri* of counsel), for defendant and third-party plaintiff-respondent.

*Paul William Beltz, P. C.* (*Russell T. Quinlan* of counsel), for respondent.

OPINION OF THE COURT

Simons, J. P.

Plaintiff, an employee of the third-party defendant Steel Contracting Corporation and the supervisor of its three-man crew, was injured during the course of work on the roof of a building owned by defendant Hooker Chemicals & Plastics Corporation. The accident happened when plaintiff fell from the roof to the ground while he was removing old sheets prior to replacing them. The roof was sloped and the old covering was too weak to stand on so the workmen were supplied with a "chicken board",[1] which was fastened to the purlins of the roof, and with safety lines attached to their safety belts. Plaintiff's complaint alleged several causes of action arising both at common law and under various sections of the Labor Law. Immediately before the commencement of trial, however, he withdrew all except his claim based on subdivision 1 of section 240 of the Labor Law which requires that owners and contractors supply scaffolding and other devices for the safety of the workmen. With the case in this posture, the court granted partial summary judgment against Hooker in the main action and in its favor in its third-party claim over against the employer and directed an assessment of damages. The third-party defendant appeals.[2]

There are two versions of how this accident happened. Plaintiff claims that while he was standing on the roof, on the chicken board, he smelled gas; that he tried to pull himself to the top of the roof by the safety lines but that as he did so the lines gave way causing him to fall to the ground. The only other witness to the accident, a co-worker named Toth, was examined before trial and his version was markedly different. Toth testified that most of the work on the roof had been completed the day before, but that on the day of the accident two sheets remained to be removed; that plaintiff directed Toth to go to the roof and remove them but he refused to do so unless the safety equipment, which had been removed at the close of the work the day before, was put in place. Plaintiff did not think it necessary

---

1. A flat board with strips nailed across it for footing.
2. For a prior appeal in this action, see *Smith v Hooker Chem. & Plastics Corp.* (83 AD2d 199).

to replace the equipment for what he considered a five-minute job, Toth said, and since Toth would not do the work, plaintiff went up on the roof to do it himself. While he was removing one of the sheets, it started to slide, carrying plaintiff over the edge of the roof to the ground and causing him serious injuries.

Thus, by plaintiff's testimony the accident occurred because the safety devices failed; by Toth's version plaintiff fell off the roof because he declined to use the safety devices supplied to him. Third-party defendant contends that this evidence raises a question of fact requiring a trial, and so it would seem. Plaintiff contends, however, that whether his evidence or Toth's is accepted, Special Term's order was proper.

It is familiar law that summary judgment should not be granted when there is any significant doubt as to the existence of a triable issue of fact (see *Rotuba Extruders v Ceppos,* 46 NY2d 223, 231; *Baker's Serv. v Robinson,* 85 AD2d 811, 812), and in determining whether a question of fact exists, the proof must be read "in the light most favorable to the party opposing the motion" (*Goldstein v County of Monroe,* 77 AD2d 232, 236; see, also, *Renda v Frazer,* 75 AD2d 490, 495-496). Under these rules, we must accept Toth's version of the case, that plaintiff declined to use the available safety devices, and decide whether an owner and contractor are required by section 240 not only to supply safety devices but also to insure that workers use them.

Subdivision 1 of section 240 of the Labor Law provides: "All contractors and owners and their agents * * * in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

To sustain a cause of action based upon this section, plaintiff must prove that the statute was violated and that defendant's conduct in violating it was the proximate cause of plaintiff's damages (see *Duda v Rouse Constr. Co.,* 32

NY2d 405, 410;[3] *Mendes v Caristo Constr. Corp.,* 5 AD2d 268, 272, affd 6 NY2d 729; see, also, *Klutz v Citron,* 2 NY2d 379, 383; *Lagzdins v United Welfare Fund-Security Div. Marriott Corp.,* 77 AD2d 585). Undoubtedly an owner or contractor violates the statute and is absolutely liable to an injured worker for injuries caused by the failure to supply proper safety devices or for supplying defective ones (see *Rea v Elia Bldg. Co.,* 79 AD2d 1102). Plaintiff contends that recent decisions have gone further, however, and hold that owners and contractors are liable as insurers even if the worker refuses to use satisfactory available safety devices. He relies principally on *Haimes v New York Tel. Co.* (46 NY2d 132), *Larabee v Triangle Steel* (86 AD2d 289) and *Cardile v D'Ambrosia* (72 AD2d 544).

In *Haimes v New York Tel. Co. (supra)* plaintiff's decedent was painting a cornice at roof level when a ladder on which he was standing toppled, throwing him 18 feet to the ground, and causing him to lose his life. Trial Term dismissed the complaint at the close of the proof. In affirming the Appellate Division's reversal and order for a new trial, the Court of Appeals ruled that under the 1969 amendment to section 240 an owner exercising no supervision or control over the work nevertheless could be held absolutely liable for failing to supply safety devices, whereas pre-amendment decisions had held that he could not (see *Haimes v New York Tel. Co., supra,* at p 136; cf. *Iuliani v Great Neck Sewer Dist.,* 38 NY2d 885). And this was so, it held, even though the injured worker was an independent contractor. It was not necessary for the court to reach the point urged on us here and it did not do so. Nothing it said suggested that an owner or contractor may be held absolutely liable if workers refuse to use available safety devices. *Larabee v Triangle Steel (supra)* is also inapposite. In *Larabee* defendants were liable because they had failed to supply any safety devices.

---

**3.** Plaintiff's counsel contends that these cases, decided before the 1969 amendment to section 240, are not applicable. The 1969 amendment, however, only changed the parties liable, the "who" not "the what" of the statute (see *Monroe v City of New York,* 67 AD2d 89, 105; see, also, NY Legis Ann, 1969, p 407). There was no other substantive change which would lessen the authority of the cases except insofar as they may have turned on the issue of who was directing the work.

■ In the remaining case plaintiff relies on, *Cardile v D'Ambrosia* (72 AD2d 544, *supra*), the jury found that defendant contractor's ladder was not defective but that the accident occurred to plaintiff because the ladder "was not 'placed and operated as to give proper protection'". (See Labor Law, § 240, subd 1.) The Appellate Division, citing *Haimes* (*supra*) held that the owner and contractor were charged with a duty under the statute to insure proper placement of the ladder and having failed to do so, they were absolutely liable for plaintiff's injuries.[4] Were we to rely on *Cardile* in this case, we would further extend that holding that owners and contractors are absolutely liable not only because of their failure to supply safety devices and see to their proper placement and operation and hold that they are also liable unless they insist that a recalcitrant worker use the devices. Whether the defendant supplied appropriate safety devices or otherwise violated the statute and thereby caused the injuries would be irrelevant; the fact of a worker's accident appearing, owners and contractors would be liable for his resulting damages. Plaintiff contends that the Legislature intended as much, that it placed an absolute duty of supplying and supervising the correct use of safety equipment upon owners and contractors when it enacted subdivision 1 of section 240 of the Labor Law. The statute does not impose such an obligation on defendants by its terms, however, and the Legislature has experienced no difficulty in the past in imposing such liability when it intended to do so. Thus section 202 of the Labor Law, pertaining to window washers and others, the statute states that "[e]very employer and contractor * * * shall comply with this section and the rules of the board and *shall require* his employee * * * to use the equipment and safety devices" (emphasis added). The legislature's failure to enact a similar requirement in

---

4. In *Haimes* the court noted that evidence of the failure properly to secure the ladder plaintiff was using would only warrant a finding that the Rules of the Board of Standards and Appeals had been violated, i.e., it would be evidence of negligence, rather than proof of a violation of the statute resulting in absolute liability (see *Haimes v New York Tel. Co., supra,* at p 134, n 2). Since the action was remitted for a new trial, it was unnecessary for the court to characterize the duty violated by the property owner as either resting upon proof of negligence or absolute liability.

section 240 must be interpreted as an indication that it did not intend to impose a similar absolute duty of supervision under section 240 (McKinney's Cons Law of NY, Book 1, Statutes, § 74). While the Legislature has sensibly acted to protect workers from a failure by owners or contractors to supply equipment or for supplying faulty equipment, the statutory protection does not extend to workers who have adequate and safe equipment available to them but refuse to use it. Their injuries may be compensated under the provisions of the Workers' Compensation Law.

■ Hooker, the third-party plaintiff, asks that the order granting it summary judgment against the third-party defendant remain in place notwithstanding this court's disposition of plaintiff's summary judgment motion. In the third-party action, it seeks to be indemnified in full for any loss it may sustain in the main action, contending that section 240 makes it only vicariously liable for plaintiff's damages. CPLR 1007 permits an indemnity claim to be pleaded prospectively in the interest of judicial economy, but the liability over cannot arise or be adjudicated until plaintiff has obtained a judgment against defendant establishing that section 240 was violated and that the violation caused plaintiff's damages (see Siegel, New York Practice, § 159, pp 201-202). Whether the indemnity owed is indemnity against liability or indemnity against loss and whether it is based upon the written contract between the parties or one implied, Hooker's cause of action cannot accrue until resolution of plaintiff's claim, and judgment may not be entered until that determination is made (see *McDermott v City of New York,* 50 NY2d 211; *McCabe v Queensboro Farm Prods.,* 22 NY2d 204, 208; *Martinez v Fiore,* 90 AD2d 483; *Adams v Lindsay,* 77 Misc 2d 824, 826 [BOOMER, J.]; 28 NY Jur, Indemnity, §§ 17-21). Moreover, Hooker is the only party plaintiff has sued or could sue for these injuries. To resolve its third-party claim now as a matter of law would leave the case in the awkward posture of plaintiff apparently contending directly against the third-party defendant, his employer, an action which section 11 of the Workers' Compensation Law prohibits.

The order of Trial Term should be reversed and summary judgment should be denied.

CALLAHAN, DOERR, BOOMER and MOULE, JJ., concur.

Order unanimously reversed, without costs, and motion denied.