65 N.Y.2d 513 (1985)
Charles T. Zimmer, Jr., Appellant,
v.
Chemung County Performing Arts, Inc., Respondent, and Elcon Contractors, Inc., et al., Defendants and Third-Party Plaintiffs-Respondents. Mac-Dan Erectors, Inc., Third-Party Defendant-Respondent.
John Hunt, Respondent,
v.
Werner Spitz Construction Company, Inc., Defendant-Appellant and Third-Party Plaintiff-Appellant, et al., Defendant and Third-Party Plaintiff. Railing Supply Company, Inc., Third-Party Defendant-Appellant.
Court of Appeals of the State of New York.
Argued March 20, 1985.
Decided July 11, 1985.
Russell T. Quinlan, Paul William Beltz and C. A. Krenzer for appellant in the first above-entitled action.
Kevin M. O'Shea for respondent in the first above-entitled action.
Samuel M. Hall for Elcon Contractors, Inc., defendant and third-party plaintiff-respondent in the first above-entitled action.
Stephen D. Smyk for Elsand Steel, Inc., defendant and third-party plaintiff-respondent in the first above-entitled action.
Peter H. Bouman for Mac-Dan Erectors, Inc., third-party defendant-respondent in the first above-entitled action.
Merle M. Troeger for defendant-appellant and third-party plaintiff-appellant in the second above-entitled action.
Charles A. Hall and Eileen E. Buholtz for third-party defendant-appellant in the second above-entitled action.
Wayne M. Harris and Melvin L. Olver for respondent in the second above-entitled action.
Judges MEYER, SIMONS and KAYE concur with Judge ALEXANDER; Judge SIMONS concurs in a separate concurring opinion; Chief Judge WACHTLER dissents and votes to affirm in another opinion in which Judge JASEN concurs; Judge TITONE taking no part.
*518 ALEXANDER, J.
We are called upon on these appeals to determine the extent to which Labor Law § 240 (1)[1] imposes liability upon an *519 owner or contractor who has failed to provide any safety devices for workers at a building worksite, and the absence of such devices is the proximate cause of injury to a worker. Based on the clear language of the statute and its purpose as articulated by the Legislature, we hold that an owner or contractor under these circumstances is absolutely liable in damages for injuries sustained by such worker.
In Zimmer v Chemung County Performing Arts, plaintiff, an ironworker, was injured while working as a member of a crew erecting a steel skeleton for an addition to a building owned by defendant Chemung County Performing Arts. Plaintiff's duties as a "connector" involved his assembling beams and columns that formed the skeleton. The accident occurred when plaintiff, in the manner usually employed by connectors in performing this task, scaled a 31-foot vertical column in order to direct a crane operator who was raising a horizontal beam to a position where plaintiff could reach it and effect the connection with the vertical column. In pulling himself over the top of the beam, plaintiff lost his grip and fell. He struck a horizontal beam in his descent and landed in an excavation outside of the structure's perimeter.
Ladders were present at the worksite, but none had been erected for plaintiff's specific task. In addition, it is uncontroverted that no safety devices were erected or provided to plaintiff. Defendants, the building owner and several contractors, presented evidence at trial that various devices, such as netting, metal decking and lifelines, normally are not used during the early stages of construction projects such as this where the steel skeleton has not yet been plumbed and securely bolted and that it would have been infeasible, even dangerous, to have used any such devices. At the close of the evidence, the trial court denied plaintiff's motion for a directed verdict, and the jury returned a verdict in defendants' favor. Plaintiff's motions to set aside the verdict and for a new trial were denied.
The Appellate Division, with one Justice dissenting, affirmed, holding that questions of fact as to whether defendants had violated the provisions of the Labor Law were raised by the conflicting expert testimony concerning the utility and feasibility of safety devices at this early stage of the construction, which issues of fact were properly submitted to the jury and resolved adversely to plaintiff.
In Hunt v Spitz Constr. Co., the plaintiff ironworker sustained serious injuries when he fell 25 feet from the flat roof of a *520 building on which he was welding corrugated decking. Plaintiff sought to recover damages from Kelview, Incorporated, the owner of the property, and Werner Spitz Construction Company, Inc., the general contractor, asserting their liability grounded both in negligence and violations of Labor Law §§ 200, 240 (1) and § 241 (6). As in Zimmer, it is conceded that no safety device was furnished to plaintiff. Defendants introduced evidence of industry custom and usage in an attempt to establish that devices such as scaffolding, nets, safety lines and safety belts were never used on the type of building involved. They also presented evidence of various State and Federal regulations that require safety devices for work places, which they argue are either inapplicable to the situation here presented or were satisfied, thus negating any claimed violation that would constitute negligence.
Decision was reserved on plaintiff's motion for a directed verdict made at the close of the evidence and the issue of defendants' liability was submitted to the jury. The jury returned a verdict of no cause of action under either a negligence theory or violation of the Labor Law. The trial court granted plaintiff's motion to set aside the verdict and for a directed verdict on liability, reasoning that in view of the uncontroverted proof that no safety devices were provided, there was no view of the evidence by which the jury could reasonably find that defendants' failure to provide safety devices was not a contributory factor in bringing about plaintiff's injuries and thus that there was a violation of Labor Law § 240 (1). Trial Term's order and judgment were affirmed by the Appellate Division (99 AD2d 671) and the ensuing trial on damages resulted in a judgment of $450,000 for plaintiff. We granted defendants leave to appeal from the final judgment pursuant to CPLR 5602 (a) (1) (ii). We now reverse the Appellate Division's order in Zimmer and affirm the order in Hunt.
We begin our analysis by again observing that the legislative history of the Labor Law, particularly sections 240 and 241, makes clear the Legislature's intent to achieve the purpose of protecting workers by placing "ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor" (1969 NY Legis Ann, at 407), instead of on workers, who "are scarcely in a position to protect themselves from accident" (Koenig v Patrick Constr. Co., 298 N.Y. 313, 318).
We gave early recognition to this legislative intent when we declared with respect to section 240, which was then substantially in its present form, that "this statute is one for the *521 protection of workmen from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed" (Quigley v Thatcher, 207 N.Y. 66, 68, quoted in Koenig v Patrick Constr. Co., supra, at p 319).
Thus, we held unavailable to a defendant owner charged with a violation of section 240 the defense of the worker's contributory negligence, noting that "both sound reason and persuasive decisions, involving statutes whose content and purpose are similar to section 240, require the conclusion that that statute does not permit the worker's contributory negligence to be asserted as a defense [citations omitted]" (Koenig, supra, at p 317). So, too, in Joyce v Rumsey Realty Corp. (17 N.Y.2d 118, 122), in considering the liability of a contractor for a violation of section 241 (1) as it existed prior to 1962, which required that the contractor complete the flooring as the building progresses, we cited Koenig in holding that "[t]he duty imposed by the statute and violated by defendant [contractor] was `a flat and unvarying' one * * * `[F]or breach of that duty, thus absolutely imposed, the wrongdoer is rendered liable without regard to his care or lack of it'" (Joyce v Rumsey Realty Corp., supra, at p 122). We held that a violation of such a statute is conclusive evidence of negligence and conclusive evidence of negligence calls for a directed verdict (Joyce v Rumsey Realty Corp., supra; see, Major v Waverly & Ogden, 7 N.Y.2d 332, 334).
Further support for the conclusion that the failure to provide any protective devices for workers at the worksite establishes an owner or contractor's liability as a matter of law is found in our previous holdings regarding the defenses available to an owner or contractor charged with a violation of section 240 (1) and the first five subdivisions of section 241, as contrasted to those available where the charge is a violation of a rule or regulation promulgated pursuant to section 241 (6). In Long v Forest-Fehlhaber (55 N.Y.2d 154), the issue was whether the contributory (now comparative) negligence of the plaintiff is a defense in an action based upon the violation of administrative rules adopted pursuant to the authorization of section 241 (6). We held that although the Legislature had placed the ultimate responsibility for safety practices at the worksite on the owner and general contractor where such responsibility actually belonged, the owner and general contractor's "ultimate responsibility" or "ultimate liability" under section 241 (6) was "unavoidable" only in the sense that it could not be delegated to another and not in the sense that it precluded an owner or contractor from *522 raising any defense to the imposition of liability. We held that because a "violation of the administrative rules adopted pursuant to the authorization of subdivision 6 of section 241 of the Labor Law cannot rise to the level of negligence as a matter of law, contributory negligence was, and comparative negligence now is, a defense to an action based on such a dereliction" (Long, at p 161).
We found this conclusion reinforced by the long-established principle that a rule of an administrative agency or an ordinance of a local government is merely some evidence to be considered on the question of a defendant's negligence and lacks the force and effect of a substantive legislative enactment. Thus, "[u]nlike a violation of the explicit provisions of a statute proper, a breach of an administrative rule * * * does not establish negligence as a matter of law, [thus it] does not render a plaintiff's own negligence irrelevant and, therefore, unacceptable as a defense [citations omitted]" (Long v Forest-Fehlhaber, supra, at p 160). We further observed that subdivision 6, which "does no more than broadly provide that the owner and contractor see to it that the area where the work is to be performed is `so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety' * * * does not in terms provide how these ends are to be met [and is] * * * but a reiteration of common-law standards" (id.; citations omitted). Finally, we observed that section 241 (6) is to be contrasted with the first five subdivisions of section 241, in which specific safeguards are set out, and with section 240, "a self-executing statute which, containing its own specific safety measures, does not defer to the rule-making authority of the board (Haimes v New York Tel. Co. [48 N.Y.2d 132])" (id., at p 160; Brant v Republic Steel Corp., 91 AD2d 841; Kenny v Fuller Co., 87 AD2d 183, lv denied 58 N.Y.2d 603; Larabee v Triangle Steel, 86 AD2d 289; France v Niagara Mohawk Power Corp., 89 AD2d 757; Monroe v City of New York, 67 AD2d 89, 105-106). Thus, a violation of section 240 (1) or the first five subdivisions of section 241 creates absolute liability. The failure to provide any safety devices is such a violation.
In Zimmer, the claimed violations were of sections 240 (1) and 241 (4)[2] of the Labor Law. Thus, the Appellate Division *523 correctly observed that there was no allegation of common-law negligence, and that there was no error in the trial court's failure to instruct the jury on the applicable rules and regulations issued by the Board of Standards and Appeals. However, in light of the uncontroverted fact that no safety devices were provided at the worksite, it was error to submit to the jury for their resolution the conflicting expert opinion as to what safety devices, if any, should be used during the very early stages of the construction. Rather, a verdict of liability should have been directed in plaintiff's favor. Conversely, in Hunt, in light of the uncontroverted fact that no safety devices were provided to plaintiff at the worksite, the jury's verdict of no liability in respect to the claimed violation of section 240 (1) was unsupportable and was properly set aside.
As indicated above, where an owner or contractor fails to provide any safety devices, liability is mandated by the statute without regard to external considerations such as rules and regulations, contracts or custom and usage. Although in Hunt, evidence of custom and usage was admissible to determine the standard of care in a negligence context under the claimed violation of sections 200 and 241 (6), where injury is allegedly caused through a violation of section 240 (1), which establishes its own unvarying standard, evidence of industry practice is immaterial (cf. International Harvester Co. v Town of Ellery, 28 AD2d 1081 ["custom, usage and practice may not waive, or in effect avoid, a mandatory statute which is clear and unambiguous on its face"]). Neither section 241 (6), nor section 200, in contrast to section 240 (1), is self-executing, but rather, both require reference to outside sources to determine the standard by which a defendant's conduct must be measured. As noted by the Second Department in Kenny v Fuller Co. (87 AD2d 183, lv denied 58 N.Y.2d 603, supra), "[t]he primary distinction between sections 240 (subd 1) and 241 (subd 6) is that the latter requires a determination of whether the safety measures actually employed on a job site were `reasonable and adequate', while the former is mandatory in its nature and imposes absolute liability for any injury arising from its breach. The question of * * * circumstantial reasonableness is therefore irrelevant under subdivision 1 of section 240" (id., at p 186 [citations omitted]).
To determine an owner or contractor's liability for a violation of section 240 (1) by reference to whether safety devices customarily are used, and, if so, which ones give "proper protection" *524 would allow owners and contractors to diminish their obligations under that statute and to set their own standard of care for the protection of workers at the worksite. This would clearly contravene the legislative purpose of placing "ultimate responsibility for safety * * * on the owner and general contractor" (1969 NY Legis Ann, at 407). As observed by Justice Mikoll, in her dissent in Zimmer, "[i]f the state of the building art is such that no devices have yet been devised to protect workers operating at such heights in dangerous work, it is illogical to conclude, given the purpose of the statute, that the responsibility of owners and contractors is then negated" (Zimmer v Chemung County Performing Arts, 102 AD2d 993, 995).
Appellants in Hunt and respondents in Zimmer contend that it is always an issue of fact whether "proper protection" has been provided under section 240 (1). However, when the evidence establishes the absence of any safety devices at the worksite, the statute's clear dictates have not been met. The mere presence of ladders or safety belts somewhere at the worksite does not establish "proper protection", leaving for the jury only the question whether the absence of safety devices was a proximate cause of the plaintiff's injury (Brant v Republic Steel Corp., 91 AD2d 841, supra). Although the plaintiff is "required to show that the violation of section 240 of the Labor Law was a contributing cause of [his accident]" (Phillips v Flintkote Co., 89 AD2d 724, 725), and this issue should be determined by the jury, where there is no view of the evidence at trial to support a finding that the absence of safety devices was not a proximate cause of the injuries, the court may properly direct a verdict in the plaintiff's favor (Rea v Elia Bldg. Co., 79 AD2d 1102; see, Duda v Rouse Constr. Corp., 32 N.Y.2d 405, 410; Joyce v Rumsey Realty Corp., 17 N.Y.2d 118, 122-123, supra; Heath v Soloff Constr., 107 AD2d 507, 512; Brant v Republic Steel Corp., supra). If proximate cause is established, the responsible parties have failed, as a matter of law, to "give proper protection."
Accordingly, in Zimmer v Chemung County Performing Arts, we hold that the trial court erred in denying plaintiff's motion for a directed verdict. The evidence established a breach of the statutory duty, and thus absolute liability, by defendants' failure to provide any safety devices. There is no view of the evidence by which defendants' violation of section 240 (1) could not have been a proximate cause of plaintiff's injury. Thus, a new trial is required on the issue of damages only.
For the same reasons, in Hunt v Spitz Constr. Corp., we affirm the judgment appealed from and the Appellate Division *525 order brought up for review which affirmed the granting to plaintiff of judgment notwithstanding the verdict.
SIMONS, J. (concurring).
I concur with the court's holding that an owner or contractor is absolutely liable under sections 240 (1) and 241 (1)-(5) of the Labor Law for injuries caused to workers because of a failure to supply safety devices and see to their proper placement and operation.
I would add that Smith v Hooker Chems. & Plastics Corp. (89 AD2d 361, appeal dismissed 58 N.Y.2d 824) relied on by defendants is distinguishable from the appeals before us. The plaintiff in that action was the on-site supervisor of a roofing subcontractor's crew and sued the owner of the premises for injuries he sustained when he fell from the roof of a building under construction. He moved for partial summary judgment before trial contending that under section 240 (1) the owner was absolutely liable to him. The moving papers demonstrated, however, that there were two versions of how he sustained his injuries, plaintiff's version that he fell when the safety equipment supplied him failed and the version of Toth, a coemployee, who alleged that plaintiff fell while working without safety equipment. Toth testified that it had been his job to repair the roof but that on the day of the accident he had refused to go onto the roof until plaintiff replaced the safety equipment which had been removed after completion of work the day before. Plaintiff refused to replace the equipment, Toth said, for what he considered a minor job and because Toth refused to go onto the roof without it plaintiff decided to perform the work himself. Thus, in the Smith case equipment was actually at the place it was to be used, it had been used the day before and the worker assigned to do the job had requested that it be put in place. Plaintiff, the subcontractor's employee charged with supervising the crew's work, was injured when he fell from the roof after deciding to risk doing the work without troubling to replace the equipment.
Arguing the motion, plaintiff claimed he was entitled to partial summary judgment on the issue of liability regardless of the version accepted because defendant was an insurer of the workers' safety, obliged not only to supply and place the equipment but to compel him to use it.
The Appellate Division reversed Trial Term's order granting plaintiff partial summary judgment, finding a factual issue on whether the injuries were caused by the failure to supply and properly place safety devices or by the refusal of the worker to use the devices supplied. In responding to plaintiff's argument, *526 the court distinguished section 240 (1) from the broader provisions of Labor Law § 202 which specifically mandate that employers and contractors must require employees to use available safety devices. Its ruling was a narrow one, that section 240 (1) does not impose a duty on an owner, as a matter of law, to compel a worker who refuses to use available satisfactory equipment to do so. That decision has no application to the facts of these cases in which those charged with responsibility for supplying safety devices deny the obligation or feasibility of doing so and rely alternatively upon evidence that there were ladders or safety belts available for use somewhere in the area of the construction site.
Chief Judge WACHTLER (dissenting).
Nothing in either the legislative history of Labor Law § 240 (1)[*] or in our decisions construing that statute suggests that it contemplates holding contractors and owners responsible for providing safety devices where the proof establishes that no such devices were available or could be adapted to the situation in which the employee was injured. Although it is true, as the majority suggests, that the statute places responsibility for safety practices at construction sites on the owner and general contractor, it does not impose upon them insurers' liability when they fail to do the impossible.
The majority relies primarily on the legislative intent underlying Labor Law § 240 (1) in support of its conclusion that the statute was intended to impose insurers' liability upon those owners and contractors whose employees have been injured on the job. However, as I have noted, nothing in the available legislative history or in our prior decisions supports such a conclusion.
Read in its entirety, the memorandum of Senator Calandra and Assemblyman Amann (1969 NY Legis Ann, at 407) makes it clear that the 1969 amendments to section 240 (L 1969, ch 1108) were intended to effect an expansion only of who could be held liable under the statute, not an expansion of the bases for liability. Thus, as the majority suggests, the amendment "places ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the *527 owner and general contractor" (at 407); it does so because the statute prior to amendment allowed subcontractors to "relieve the owner or general contractor of liability for safe work practices merely by securing the basic workmen's compensation coverage" (id.). The amendment, intended to reestablish the exposure of general contractors and owners, changed those covered by its provisions from "A person employing or directing another to perform labor of any kind" to "All contractors and owners and their agents" (L 1969, ch 1108, § 1). The amendment only changed the parties liable, the "who" not "the what" of the statute (Haimes v New York Tel. Co., 46 N.Y.2d 132; Allen v Cloutier Constr. Corp., 44 N.Y.2d 290, rearg denied 45 N.Y.2d 776; Smith v Hooker Chems. & Plastics Corp., 89 AD2d 361, 364, n 3, appeal dismissed 58 N.Y.2d 824). We recognized that there were limits to the so-called "absolute" liability imposed by section 240 in Koenig v Patrick Constr. Corp. (298 N.Y. 313, 319), where we noted that the legislative purpose was to require "the employer to safeguard the workers from injury caused by faulty or inadequate equipment" (emphasis added).
Nowhere in this account is there any indication that the Legislature intended to impose upon owners and contractors the responsibility for accidents they could not have prevented. The majority points to no case which has so held. I believe the imposition of such liability, predicated upon generalized expressions of legislative intent, taken out of context, is an unwarranted usurpation of the legislative function by this court with which I cannot concur.
In addition, proximate cause is a necessary element in an action based on Labor Law § 240 (Duda v Rouse Constr. Corp., 32 N.Y.2d 405, 410) and, when the establishment of that element has turned on whether the missing safety devices, if provided, could have prevented the plaintiff's injury, the question has been one for the jury (Glielmi v Toys "R" Us, 94 AD2d 663, affd 62 N.Y.2d 664).
Because I read the statutory policy underlying Labor Law § 240 as encouraging owners and contractors to provide safety devices where possible, and not to provide insurance coverage to their employees (who are already covered by workers' compensation), I respectfully dissent, and urge the Legislature to amend the statute to make this intent more clear. The imposition of insurers' liability on owners and contractors will not further the goal of protecting workers, because the absent devices cannot protect them. It will, however, hurt the building industry and perhaps cost those already adequately protected workers their *528 jobs. In Zimmer v Chemung County Performing Arts, therefore, the order of the Appellate Division should be affirmed, and in Hunt v Spitz Constr. Co., the judgment appealed from and order of the Appellate Division brought up for review should be reversed and the jury's verdict reinstated.
In Zimmer v Chemung County Performing Arts: Order reversed, with costs, plaintiff's motion for a directed verdict granted, and case remitted to Supreme Court, Tioga County, for a new trial on the issue of damages only.
In Hunt v Spitz Constr. Co.: Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.
NOTES
[1] Labor Law § 240 (1) provides, in pertinent part: "1. All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."
[2] Labor Law § 241 (4) provides that:

"All contractors and owners and their agents * * * when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
* * *
"4. If the floor beams are of iron or steel, the entire tier of iron or steel beams on which the structural iron or steel work is being erected shall be thoroughly planked over, except spaces reasonably required for proper construction of the iron or steel work, for raising or lowering of materials or for stairways and elevator shafts designated by the plans and specifications."
[*] Labor Law § 240 (1) provides, in pertinent part: "1. All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."