▮ TIMOTHY CAHILL, Respondent, v TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, Appellant. [771 NYS2d 655]—

Order, Supreme Court, New York County (Edward Lehner, J.), entered June 11, 2003, which granted plaintiff's motion for summary judgment on the issue of liability, for violation of Labor Law § 240 (1), affirmed, without costs.

In the course of greasing coil rod ties inside a 35-foot form wall located beneath the Triborough Bridge, plaintiff, a construction laborer, sustained personal injuries when he fell approximately 15 feet to the ground as he attempted to ascend the form while wearing a safety harness. Although this safety harness, which is equipped with a positioning hook and lanyards, was designed to be directly attached to a safety line, there was no such safety line available to plaintiff. Plaintiff was then compelled to use the harness's own positioning hook to inch his way up the form by releasing the hook, climbing up and reconnecting the hook to the form.

Plaintiff moved for summary judgment on the issue of liability for violation of Labor Law § 240 (1). The IAS court granted the motion, finding, inter alia, that defendant failed to provide plaintiff with proper safety devices to prevent his fall and that plaintiff was not a recalcitrant worker for not availing himself of the worksite's other safety equipment. We affirm.

We find no question that the recalcitrant worker defense is not applicable to the facts of the instant matter since defendant in response to plaintiff's prima facie showing failed to raise a triable issue as to whether plaintiff had "disobeyed an immediate instruction to use a harness or other actually available safety device" (*Sanango v 200 E. 16th St. Hous. Corp.*, 290 AD2d 228, 228 [2002]). There is no evidence that plaintiff refused an immediate instruction to use any particular safety device in ascending or descending from his work platform. While defendant acknowledged that a general safety instruction was given

to plaintiff approximately three weeks before the incident, it is firmly established in this Department that an immediate instruction is a requisite of the "recalcitrant worker" defense (*see Olszewski v Park Terrace Gardens*, 306 AD2d 128 [2003]; *DePalma v Metropolitan Transp. Auth.*, 304 AD2d 461, 462 [2003]; *Sanango, supra*; *Laquidara v HRH Constr. Corp.*, 283 AD2d 169, 170 [2001]).

Defendant also failed to raise an issue of fact with regard to plaintiff's alleged refusal to obey an order to use safety devices immediately available to him. Defendant may not avoid liability due to the availability of a safety device somewhere at the worksite, or by reason of plaintiff's purported failure to heed a general safety instruction given to him at some point in the past (*see Crespo v Triad, Inc.*, 294 AD2d 145, 147 [2002]; *Balthazar v Full Circle Constr. Corp.*, 268 AD2d 96, 99 [2000]; *Powers v Del Zotto & Son Bldrs.*, 266 AD2d 668 [1999]). Concur—Rosenberger, Williams and Lerner, JJ.

Andrias, J.P., dissents in a memorandum as follows: I respectfully dissent and would reverse and deny plaintiff's motion for summary judgment on the issue of liability for violation of Labor Law § 240 (1) and remand the matter for further proceedings.

In granting plaintiff summary judgment on his Labor Law § 240 (1) claim, the motion court found that defendant failed to see that plaintiff was provided with proper safety devices so as to prevent his fall. It also discounted defendant's "recalcitrant worker" defense because defendant acknowledged that the instructions to plaintiff as to the use of the safety devices were given approximately three weeks prior to the accident. Quoting *Sanango v 200 E. 16th St. Hous. Corp.* (290 AD2d 228 [2002]), the court held that plaintiff may not be deemed a recalcitrant worker " 'where there is no evidence that he disobeyed an *immediate* instruction to use a harness or other available safety devices' (emphasis supplied)."

However, there is nothing in the statute that necessarily leads to a conclusion that disobedience of an immediate order is a prerequisite for a finding that a worker who fails or refuses to use available safety devices is recalcitrant. If that were so the more appropriate term would be an "insubordinate worker."

While this and other Departments have repeatedly used the "immediate" instruction language, in *Smith v Hooker Chems. & Plastics Corp.* (89 AD2d 361 [1982], *appeal dismissed* 58 NY2d 824 [1983]), the case from which the recalcitrant worker defense is derived, the Fourth Department (per then Justice Simons) reversed and denied the plaintiff summary judgment on his Labor Law § 240 (1) claim, rejecting plaintiff's conten-

tion that an owner or contractor violates the statute and is absolutely liable to an injured worker not only for injuries caused by the failure to supply proper safety devices or for supplying defective ones, but is also liable as an insurer even if the worker refuses to use satisfactory available safety devices. In so ruling, the Court stated: "Plaintiff contends that the Legislature intended as much, that it placed an absolute duty of supplying and supervising the correct use of safety equipment upon owners and contractors when it enacted subdivision 1 of section 240 of the Labor Law. The statute does not impose such an obligation on defendants by its terms, however, and the Legislature has experienced no difficulty in the past in imposing such liability when it intended to do so. Thus[, in] section 202 of the Labor Law, pertaining to window washers and others, the statute states that '[e]very employer and contractor . . . shall comply with this section and the rules of the board and *shall require* his employee . . . to use the equipment and safety devices' (emphasis added). The legislature's failure to enact a similar requirement in section 240 must be interpreted as an indication that it did not intend to impose a similar absolute duty of supervision under section 240 (McKinney's Cons Law of NY, Book 1, Statutes, § 74). While the Legislature has sensibly acted to protect workers from a failure by owners or contractors to supply equipment or for supplying faulty equipment, the statutory protection does not extend to workers who have adequate and safe equipment available to them but refuse to use it. Their injuries may be compensated under the provisions of the Workers' Compensation Law." (*Id.* at 365-366; *see also* concurring op of Simons, J., in *Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 525 [1985].)

More recently, in a related context, the Court of Appeals stated:

"Even when a worker is not 'recalcitrant,' we have held that there can be no liability under section 240 (1) when there is no violation and the worker's actions (here, his negligence) are the 'sole proximate cause' of the accident. Extending the statute to impose liability in such a case would be inconsistent with statutory goals since the accident was not caused by the absence of (or defect in) any safety device, or in the way the safety device was placed. . . .

"Thus, if a statutory violation is a proximate cause of an injury, the plaintiff cannot be solely to blame for it. Conversely, if the plaintiff is solely to blame for the injury, it necessarily means that there has been no statutory violation. . . .

"[T]he language of Labor Law § 240 (1) 'must not be strained'

to accomplish what the Legislature did not intend" (*Blake v Neighborhood Hous. Servs. of New York City*, 1 NY3d 280, 290-292 [2003]).

In the instant case, plaintiff, who was assigned to grease coil rod ties inside a form wall beneath the Triborough Bridge, had, earlier in the day, used a man lift to raise himself to the top of the 35-foot form before climbing out of the lift and entering the form, where he worked for several hours until he ran out of grease. When he climbed out of the form, he discovered that the man lift had been moved to another column where it was being used by some carpenters. Plaintiff climbed down the form, reached the ground without mishap and refilled his grease bucket. Then, without attempting in any way to inquire about the availability of the man lift or attempting to use it again, plaintiff began to climb back up the form, wearing a safety harness which contained a positioning hook and lanyards that are designed to be hooked to safety lines. Three weeks earlier, after one of his foremen observed him improperly climbing a form, plaintiff was told not to use his positioning hook to climb. Instead, he was instructed, and the foreman demonstrated, how to use the lanyards on his safety harness by attaching them to an available safety line on the form.

Although there apparently was no safety line where he wanted to ascend, plaintiff nevertheless utilized the positioning hook that was connected to a harness, and made his way up the form by placing the grease can above him, unfastening the positioning hook, climbing up and reattaching the positioning hook. He repeated the process several times, but, at some point, approximately 15 feet from the ground, he inexplicably fell backwards after he had released the positioning hook.

Accordingly, under the circumstances of this case, questions of fact are presented as to whether defendant provided plaintiff with appropriate safety devices, whether plaintiff was a recalcitrant worker, and whether plaintiff's conduct was the sole proximate cause of the accident. Thus, plaintiff's motion for summary judgment on his Labor Law § 240 (1) claim should have been denied (*see generally Montgomery v Federal Express Corp.*, 307 AD2d 865 [2003]).