■ RYSZARD JASTRZEBSKI, Appellant, v NORTH SHORE SCHOOL DISTRICT, Respondent. (And Two Third-Party Actions.) [637 NYS2d 439] —In an action to recover damages for personal injuries, the plaintiff appeals, as limited by his brief, from so much of an order and judgment (one paper) of the Supreme Court, Nassau County (Kutner, J.), entered November 3, 1993, as, upon (1) the denial of the plaintiff's motion pursuant to CPLR 4401 for judgment as a matter of law, (2) a jury verdict finding that the plaintiff had deliberately refused the direction of his supervisor to use a scaffold instead of a ladder, and (3) the denial of the plaintiff's motion pursuant to CPLR 4404 to set aside the verdict as contrary to the weight of the evidence, dismissed the plaintiff's cause of action under Labor Law § 240 (1).

Ordered that the order and judgment is affirmed insofar as appealed from, with costs to the respondent.

Contrary to the plaintiff's argument, the jury's determination that he acted as a recalcitrant worker who, at the time of his accident, deliberately refused to utilize the properly constructed and available safety devices, was fully supported by the evidence and should be affirmed. Moreover, the court properly denied the plaintiff's motions pursuant to CPLR 4401 for judgment as a matter of law, and pursuant to CPLR 4404 to set aside the verdict as contrary to the weight of the evidence.

It is well established that on a motion for judgment as a matter of law, the court is not to engage in the weighing of evidence; rather, the court's function is to determine whether "by no rational process could the trier of facts find for the nonmoving party" (*Dolitsky v Bay Isle Oil Co.*, 111 AD2d 366; *see also, Westchester Joint Water Works v City of Yonkers*, 155 AD2d 534, 536; *Dooley v Skodnek*, 138 AD2d 102). It is equally well established that the evidence must be viewed in the light most favorable to the nonmoving party and that the motion should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility (*see, Dolitsky v Bay Isle Oil Co., supra; see also, Ampolini v Long Is. Light. Co.*, 186 AD2d 772; *Quadrozzi v Norcem, Inc.*, 125 AD2d 559).

Here, the evidence, when viewed in the light most favorable to the defendants, establishes that the plaintiff was on a ladder attempting to affix a piece of plywood to a wall when his immediate supervisor, Richard Seider, ran over to him and told him to get down off the ladder. After the plaintiff had climbed down from the ladder, Seider told him that using the ladder was "no good" and then, pointing to the scaffold which was in place at the site, directed the plaintiff to use the scaffold. Although the plaintiff indicated his assent to the directive, he reclimbed the ladder as soon as Seider had turned his back and began to walk away. It was at this point in time that the plaintiff fell off the ladder.

Labor Law § 240 (1) provides that: "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed".

Labor Law § 240 (1) was enacted for the laudatory purpose of protecting workers who are working at a height from the risk of falling (*see, Rocovich v Consolidated Edison Co.*, 78 NY2d 509). However, "[w]hile Labor Law § 240 [1] is to be liberally construed, it should not be implemented by decisional law in such a manner as to create a right of recovery not envisioned by the legislature" (*Cannata v One Estate*, 127 AD2d 811, 813; *see also, DaBolt v Bethlehem Steel Corp.*, 92 AD2d 70, 75). Thus, the courts have interpreted Labor Law § 240 (1) to provide defendants with a "recalcitrant worker" defense in a statute that otherwise requires absolute liability (*see, Gordon v Eastern Ry. Supply*, 82 NY2d 555, 562). The defense is premised upon the principle that "the statutory protection does not extend to workers who have adequate and safe equipment available to them but refuse to use it" (*Smith v Hooker Chems. & Plastics Corp.*, 89 AD2d 361, 366).

The plaintiff argues that even viewing the facts in the light most favorable to the defendant, he was not a recalcitrant worker, citing the Court of Appeals decision in *Gordon v Eastern Ry. Supply (supra)*. However, his reliance on *Gordon* is misplaced since, read properly, *Gordon* validates the trial court's decision to allow the instant case to go to the jury. In *Gordon*, the plaintiff was injured when he fell off a ladder while sandblasting a railroad car. Although he had been previously instructed not to use a ladder while sandblasting, the court found that the facts were insufficient to deem him to be a recalcitrant worker. However, the facts of this case are significantly different from *Gordon*.

Here, the plaintiff could have used the assembled scaffold when ordered to by his supervisor. In contrast, the record in *Gordon* showed that the one available scaffold could not have been used by the plaintiff since the scaffolding was already being used by another worker on the opposite side of the train. Thus, the plaintiff was not provided with the proper safety devices to prevent his fall. Implicit in *Gordon* is that the recalcitrant worker defense "has no application where * * * no adequate safety devices were provided" (*Stolt v General Foods Corp.*, 81 NY2d 918, 920). Indeed, in *Gordon*, the Court made it clear that "the defense * * * requires a showing that the injured worker refused to use the safety devices that were provided by the owner" (*supra*, at 920). In this case, unlike *Gordon*, scaffolding had been provided and was available for use by the plaintiff, who refused to use it contrary to direct orders to do so.

Moreover, in the instant case, Seider admonished the

plaintiff and, just prior to the accident, gave him very specific orders not to use the ladder and to use the available scaffold. This immediate and active direction by the supervisor is significantly different from the distant and passive instruction in *Gordon*. In *Gordon*, the evidence indicated only that the plaintiff had been given general safety instructions in the past which had included warnings that the use of a ladder while sandblasting was not proper. There was no evidence in *Gordon* that the plaintiff had knowingly refused a direct order as the plaintiff in this case had. The instant case involves more than an instruction to avoid using unsafe equipment or to avoid engaging in unsafe practices; rather, the plaintiff here refused to use the available, safe, and appropriate equipment.

Furthermore, it should be noted that Labor Law § 240 (1) does " '[not] impose upon the owner [or contractor] a continuing duty of supervision "to insist that a recalcitrant worker use the devices" ' " (*Lickers v State of New York*, 118 AD2d 331, 334, citing *Heath v Soloff Constr.*, 107 AD2d 507, 510). Seider was not required to wait interminably at the foot of the ladder to make sure that the plaintiff did not climb the ladder. Moreover, there is nothing in *Gordon* or in the case law which indicates that the plaintiff would have had to tell his supervisor to his face that he was not going to obey him in order for the defendants to avail themselves of the recalcitrant worker defense. Here, the totality of the circumstances established the defendants' entitlement to the defense.

The plaintiff also argues that the Court in *Gordon* held that for a defendant to avail itself of the recalcitrant worker defense, all other unsafe devices must actually be removed from the premises by the defendants. However, neither *Gordon* nor any other case has held, explicitly or implicitly, that Labor Law § 240 (1) requires such behavior. In fact, Labor Law § 240 (1) only requires that the appropriate safety devices "be so constructed, placed and operated as to give proper protection to a person so employed". Significantly, in the instant case, a scaffold had been constructed, placed, and operated by the defendants at the site at the time of the accident. Therefore, it is irrelevant that a ladder was present at the worksite.

The facts of *Smith v Hooker Chem. & Plastics Corp. (supra)* are directly on point to the present case. In *Smith*, the plaintiff fell off a roof when he refused to use the safety devices supplied to him. The Court stated that Labor Law § 240 did not place an absolute duty on the owner to supervise the correct use of safety equipment: "Thus section 202 of the Labor Law, pertaining to window washers and others, the statute states

that '[e]very employer and contractor * * * shall comply with this section and the rules of the board and *shall require* his employee * * * to use the equipment and safety devices' (emphasis added). The legislature's failure to enact a similar requirement in section 240 must be interpreted as an indication that it did not intend to impose a similar absolute duty of supervision under section 240" (*Smith v Hooker Chem. & Plastics Corp., supra*, at 366).

Likewise, the defendants in this case did not have an absolute duty to continually supervise the plaintiff's work to be able to invoke the recalcitrant worker defense.

Finally, the cases of *Lynch v City of New York* (209 AD2d 590) and *Cannata v One Estate (supra)* are also on point. In both cases, the plaintiffs refused to use the available safety devices available to them at the time of their accidents. The respective courts denied the plaintiffs' motions to hold that the defendants were liable as a matter of law under Labor Law § 240 (1) and held that a jury should determine whether the defendants acted as recalcitrant workers.

We note that the plaintiff's contention with respect to the court's refusal to give a missing witness charge is without merit.

In conclusion, the Supreme Court properly denied the plaintiff's motion for judgment as a matter of law on the issue of liability pursuant to Labor Law § 240 (1). A refusal to follow orders can be implied from a worker's conduct and not just from his words. A different ruling would effectively eliminate the recalcitrant worker defense, a determination which should be left to the Court of Appeals. Moreover, we find that the verdict was not against the weight of the evidence. Balletta, Rosenblatt and Pizzuto, JJ., concur.

Bracken, J. P., dissents and votes to reverse the order and judgment insofar as appealed from, grant the plaintiff judgment as a matter of law on the issue of liability, and remit the matter for a trial on the issue of damages, with the following memorandum, with which Krausman, J., concurs. In *Gordon v Eastern Ry. Supply* (82 NY2d 555), just as in the present case, the plaintiff was injured in a fall from a ladder which he had been instructed not to use. In *Gordon (supra)*, just as in the present case, the ladder was not the only structure available to the plaintiff in order to permit him to arrive at the elevation required for the performance of his job. Under these circumstances, I cannot concur with my colleagues in the majority that the "recalcitrant worker" defense, which was expressly rejected by the Court of Appeals in the *Gordon* case *(supra)*,

may nevertheless be adopted here, under facts which are virtually identical.

The majority attempts to distinguish *Gordon (supra)* on the theory that the plaintiff in that case had no alternative but to use the ladder because "the one available scaffold could not have been used * * * since [it] was already being used by another worker on the opposite side of the train" (at 679). This statement, however, is in apparent conflict with the text of both the majority and the dissenting decisions at the Appellate Division (*see, Gordon v Eastern Ry. Supply*, 181 AD2d 990, *affd* 82 NY2d 555). According to the Appellate Division majority in *Gordon (supra)*, the defendants in that case had established "that there was a scaffold available" (*Gordon v Eastern Ry. Supply, supra*, at 991). According to the dissent, the defendants had "submitted proof that two scaffolds, not one, were available" (*Gordon v Eastern Ry. Supply, supra*, at 992; [Balio, J., dissenting in part and affirming in part]). These critical findings of fact were not disturbed by the Court of Appeals, and we must therefore presume that they were accepted as proper findings. Presumably, the Court of Appeals would not have affirmed the grant of summary judgment to the plaintiff in *Gordon (supra)* without commenting on the presence of factual misstatements in the decision of the Appellate Division.

The *Gordon* case involved a plaintiff who was injured "while sandblasting a railroad car in a sandhouse" (*Gordon v Eastern Ry. Supply, supra*, at 991). Aside from the discrepancy relating to the exact number of scaffolds available (according to the majority, one; according to the dissent, two) the facts of the case as recited in the opinion of Justice Balio, who dissented and voted to affirm the denial of the plaintiff's motion for summary judgment, are not contradicted. These facts were set forth as follows (*Gordon v Eastern Ry. Supply, supra*, at 992): "Defendants submitted proof that two scaffolds, not one, were available in the sandhouse; that the employee handbook distributed to each employee unequivocally stated that ladders were not to be used for sandblasting; that plaintiff was instructed during his training never to use a ladder for sandblasting; that prior to the subject accident, plaintiff was observed using the ladder for sandblasting on more than one occasion and was told never to use the ladder for such purpose because it was unsafe; and that plaintiff attended a safety meeting at which employees were directed not to use a ladder for sandblasting. There is no evidence that the available scaffolding was unsafe. Indeed, plaintiff admits that he knew the ladder was unsafe and that the scaffolding was definitely safer because it was more stable.

According to his foremen, the day after the accident plaintiff admitted that he knew he was not to use the ladder for blasting but that he chose to use the ladder because he could get the job done faster".

Thus, the *Gordon* case involved a plaintiff who used a ladder, even though he was conscious of the fact that a scaffold would have been safer, even though he had been told by his employer not to do so, and even though a scaffold was "available". The plaintiff in *Gordon* was, if anything, more blameworthy than the plaintiff herein; yet, in *Gordon*, the plaintiff was held entitled to judgment as a matter of law, while in this case, my colleagues decide that it is the defendant who should prevail based on the jury's determination.

To explain this apparent discrepancy, my colleagues have recast the facts of *Gordon (supra)* so that the scaffold repeatedly said to have been available by the Judges who heard that appeal has now become unavailable, or at least unavailable at the exact time that the plaintiff in *Gordon*, who was apparently in a hurry to do his job, wanted to use it. Even assuming that it might be more accurate to say that no scaffold was in fact available at the time of the plaintiff's accident, the fact remains that both the Court of Appeals and the Appellate Division wrote decisions premised on the supposed availability of a scaffold.

In sum, the facts of the *Gordon* case are indistinguishable from those of the case now before us. The disparity in the results is not justified. I therefore dissent and vote to reverse.