OPINION OF THE COURT
Andrew V. Siracuse, J.
The parties correctly concur that Labor Law § 240 (1) applies to this fall-through-roof accident. Plaintiff has accordingly moved for summary judgment on liability. Defendants have cross-moved for summary judgment on their "recalcitrant worker” affirmative defense and have also moved for a conditional judgment of indemnification against third-party defendant, which countermoves against defendants for failure to furnish a bill of particulars.
The two kindred issues raised by defendants’ cross motion based on the recalcitrant worker defense are (i) whether the facts in the record bar recovery as a matter of law under that doctrine and, if not, (ii) whether the evidence is minimally sufficient to create a triable factual issue under the doctrine which might preclude recovery if resolved favorably to defendants on a trial. >
This court concludes as a matter of law that the facts do not support the recalcitrant worker defense because of the conspicuous lack of a prerequisite evidentiary showing of an express or implied deliberate refusal by plaintiff’s decedent to use the available safety line at the time of the accident (see, Smith v Hooker Chems. & Plastics Corp., 89 AD2d 361, 366; Jastrzebski v North Shore School Dist., 223 AD2d 677; Haystrand v County of Ontario, 207 AD2d 978; Hall v Cornell Univ., 205 AD2d 872; see also, Gordon v Eastern Ry. Supply, 82 NY2d 555, 563; Stolt v General Foods Corp., 81 NY2d 918, 920; Hagins v State of New York, 81 NY2d 921, 922-923). An unintentional failure to use the safety line would not support the recalcitrant worker defense, since such failure would only go to decedent’s *348 negligence which cannot prevent imposition of absolute liability under section 240 (1) of the Labor Law (see, Bland v Manocherian, 66 NY2d 452, 459; Stolt v General Foods Corp., supra, 81 NY2d, at 920; Haystrand v County of Ontario, supra). This court also concludes there is no factual issue requiring a trial.
Since the dispositive legal issues in this case revolve solely around the recalcitrant worker defense, the legal significance of the salient facts relevant thereto may best be considered in light of a prior discussion of the nature of, and the principles governing applicability of, that defense. The recalcitrant worker doctrine, born of decisional interpretations of Labor Law § 240 (1), holds in essence that the absolute liability protection ordinarily provided by that statute does riot extend to a worker who knowingly disregards instructions by deliberately refusing to use an available safety device (see, Smith v Hooker Chems. & Plastics Corp., supra; Jastrzebski v North Shore School Dist., supra). While an injured worker’s negligence is not a defense to a Labor Law § 240 (1) claim (see, Gordon v Eastern Ry. Supply, supra, 82 NY2d, at 562), the recalcitrant worker defense may allow a defendant to escape liability under the statute where the intentional refractory conduct of the worker in using the equipment results in his injuries (see, Smith v Hooker Chems. & Plastics Corp., supra; Jastrzebski v North Shore School Dist., supra).
However, since the protection afforded a worker by Labor Law § 240 (1) is salutary and in furtherance of the public policy to place ultimate responsibility for safety practices at construction jobs on the owner and general contractor instead of on workers (see, Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520-521), the recalcitrant worker defense has been circumscribed by constrictive rules. Thus, it does not apply where a worker has not been provided with adequate and safe equipment (see, Stolt v General Foods Corp., supra, 81 NY2d, at 920; Hagins v State of New York, supra, 81 NY2d, at 922-923; Heath v Soloff Constr., 107 AD2d 507, 510-511). Where such equipment has in fact been provided to the worker, a condition precedent to successful invocation of the defense is proof that the injured worker "deliberately refused” to use the equipment (see, Gordon v Eastern Ry. Supply, supra; Koumianos v State of New York, 141 AD2d 189, 192; Smith v Hooker Chems. & Plastics Corp., supra; Jastrzebski v North Shore School Dist., supra).
While such refusal can be implied from a worker’s conduct and not just from his words (see, Jastrzebski v North Shore *349 School Dist., supra), the mere fact that a worker has been repeatedly instructed to use certain equipment does not in itself support an inference of deliberate refusal when he has failed to do so (see, Gordon v Eastern Ry. Supply, supra, 82 NY2d, at 563; Hagins v State of New York, supra, 81 NY2d, at 922; Adams v Cimato Bros., 207 AD2d 997; Hoffmeister v Oak-tree Homes, 206 AD2d 921). Stated somewhat differently, deliberate refusal cannot be inferred from unexplained nonuse. If mere negligent omission is at least an equally probable inference, either conclusion would be merely speculative (see, Galbraith v Busch, 267 NY 230, 235; Ingersoll v Liberty Bank, 278 NY 1, 7; Markel v Spencer, 5 AD2d 400, 407, affd 5 NY2d 958; Bernstein v City of New York, 69 NY2d 1020, 1021; Schneider v Kings Highway Hosp. Ctr., 67 NY2d 743, 744); and since mere negligent omission to use an available safety device despite instructions to do so will not support the defense (see, Gordon v Eastern Ry. Supply, supra; Stolt v General Foods Corp., supra; Haystrand v County of Ontario, supra), the defense must fail.
Construing the facts and all reasonable inferences deducible therefrom most favorably to plaintiff as the opponent on defendants’ summary judgment motion (see, Weller v Colleges of Senecas, 217 AD2d 280, 284; Milkie v Tops Mkts., 207 AD2d 1010), the record reveals the following:
Plaintiffs 31-year-old decedent and his co-worker James Walworth were partners in D&G Construction. This partnership had contracted with Wm. C. McCombs Company (hereinafter McCombs) to cut skylight openings in the flat, corrugated steel roof of a building under construction in Clay, New York, owned by defendant Sam’s Club. On April 7, 1993, after three (southern lateral and two vertical) sides of one such opening had been cut, the saw blade became dull. Both workers had to leave the cutting area to procure and insert a new blade in the saw since the insertion was a somewhat difficult two-man job. Upon returning to the area where they had been cutting they discussed which way the cut on the north side should be made; when decedent walked to the north side he fell through the roof to his death 35 feet below on the ground.
Despite the workers being repeatedly instructed that they must work with safety lines attached, decedent and Walworth preferred not to do so, often keeping their lanyards available to hook on to safety lines only when a foreman or OSHA representative was present and watching. As to this particular occasion, Walworth testified that decedent was not hooked up at the time of the accident, though he was wearing a safety belt *350 and had a lanyard, and he assumed decedent had been hooked on to a safety line when they were making the cuts "a little bit earlier than the accident” (EBT, at 73-74, 76). However, the record is shatteringly silent as to whether on this particular occasion decedent deliberately refused to hook up or simply unintentionally failed to re-hook on to the line upon returning to the cut area immediately prior to the accident.
In this latter regard there was testimony that workers were not expected to be tied on at all times. The store under construction was a large one and the flat roof in itself was not dangerous to walk on. McCombs’ foreman Clarence Dalcin testified that "usually you unhook the safety rope if you have to go move away, get materials, get something else, more tools” (EBT, at 60) and defendants’ memorandum of law (at 3) concedes that workers were required to tie to the safety lines only "during particular aspects of the job”. The indisputable fact that decedent and Walworth were required to leave the cut area shortly before the accident to procure and install a new blade fairly justifies the inference that they would have had to unhook their safety lines to perform that task. In any event, the record does not provide any evidence whatsoever as to whether decedent refused or merely negligently failed to hook on to the safety line upon returning to the cut area. That deficiency in proof cannot be remedied by conjecture or speculation (see, Bernstein v City of New York, supra, 69 NY2d, at 1021; Schneider v Kings Highway Hosp. Ctr., supra, 67 NY2d, at 744; Feblot v New York Times Co., 32 NY2d 486, 494).
In the procedural context of this case defendants initially had to support their summary judgment motion by establishing the merit of their recalcitrant worker defense as a matter of law (CPLR 3212 [b]; see, Lesocovich v 180 Madison Ave. Corp., 81 NY2d 982, 985; Marine Midland Bank v Hallman’s Budget Rent-A-Car, 204 AD2d 1007, 1009) or, failing that, had to show through competent proof that there is at least a triable material issue of fact which, if resolved favorably to defendants on a trial, would support the recalcitrant worker defense (see, Ha-gins v State of New York, supra, 81 NY2d, at 922; Adams v Cimato Bros., supra). The conclusion is ineluctable on this record that defendants have borne neither burden.
To prevail on their summary judgment motion defendants had to establish each element of the recalcitrant worker defense through evidentiary proof in admissible form warranting a directed judgment in their favor dismissing the complaint (CPLR 3212 [b]; see, Zuckerman v City of New York, 49 *351 NY2d 557, 562). Neither mere repetition of allegations in their pleading (see, Ehrlich v American Moninger Greenhouse Mfg. Corp., 26 NY2d 255; Indig v Finkelstein, 23 NY2d 728), mere conclusions of fact and law (see, Vermette v Kenworth Truck Co., 68 NY2d 714, 717; Zuckerman v City of New York, supra, 49 NY2d, at 562), mere expressions of hope or unsubstantiated allegations or assertions (see, Zuckerman v City of New York, supra; Dempsey v Intercontinental Hotel Corp., 126 AD2d 477, 479) nor mere conjectural assertions (see, Trails W. v Wolff, 32 NY2d 207, 221; Richardson v New York Univ., 202 AD2d 295, 296; Jones v Sumo Container Sta., 186 AD2d 539) can satisfy that evidentiary criterion.
Defendants partially sustained their burden by proof of three elements of the recalcitrant worker defense: that safety lines had been provided, that the workers had been repeatedly instructed to use safety lines, and that decedent was not hooked on to a line at the time of the accident; they failed however to prove the fourth crucial element of the defense, viz., that decedent had "deliberately refused” to use the line immediately prior to the accident (see, Koumianos v State of New York, 141 AD2d 189, supra; Jastrzebski v North Shore School Dist., 223 AD2d 677, supra). This record is conspicuously devoid of any proof in that regard; the tandem evidence of the instructions requiring the use of the line and the unexplained noncompliance therewith does not per se legally establish willful refusal (see, Gordon v Eastern Ry. Supply, 82 NY2d 555, supra; Hoffmeister v Oaktree Homes, 206 AD2d 921, supra).
This is not a case where the worker was personally directed immediately before an accident to use an available safety device but contumaciously refused to do so as in Jastrzebski (supra). There is no direct or circumstantial evidence in this record that decedent intentionally refused to attach himself to the safety line on this occasion. Walworth’s testimony that he and decedent preferred not to hook on to the lines and often kept their lanyards available to do so when supervisory personnel were present was generic in nature and not specifically referable to this particular occasion. Indeed, Walworth more pointedly testified that on this occasion decedent apparently had been hooked on to a line shortly before the two of them left the area to install a new blade in the saw (during which period decedent could not have remained hooked) but was not attached to the line at the time of the accident. But even if there were no evidence in the record that decedent had at some point used the safety line on the day of the accident, the *352 totality of evidence is palpably insufficient under the precepts governing circumstantial evidence to justify an inference that decedent recalcitrantly refused rather than merely negligently failed to attach himself to the line.
It is fundamental that there must be evidence from which the existence or nonexistence of the fact in issue may be inferred as a probable consequence and the inference drawn must be logically compelling in the sense that it is the only one fairly and reasonably deducible from that evidence (see, Markel v Spencer, supra, 5 AD2d, at 407; Galbraith v Busch, supra, 267 NY, at 235; Schneider v Kings Highway Hosp. Ctr., supra, 67 NY2d, at 744). An inference may not be drawn where the probabilities are evenly balanced by pointing equally to a contrary inference because to do so under those circumstances would be to wrongly indulge in speculation and conjecture (see, Markel v Spencer, supra; Galbraith v Busch, supra; Ingersoll v Liberty Bank, supra, 278 NY, at 7; Bernstein v City of New York, supra, 69 NY2d, at 1021). Applying those precepts to this case compels the conclusion that the unexplained bald fact of nonuse of the safety line cannot possibly lead to an inference of deliberate refusal since the probability of mere negligent omission was at least as equally great as that of recalcitrant refusal (see, Galbraith v Busch, supra).
The recalcitrant worker defense was never intended to relieve an owner or general contractor of absolute liability under Labor Law § 240 (1) on the basis of nonprobative guesswork as to whether the worker intentionally or negligently refused to use a safety device as instructed. Defendants are not entitled to summary judgment.
Defendants are similarly not entitled to a trial on the issue of deliberate refusal because, as shown by the facts and law discussed above, the evidence does not circumstantially support an inference of intentional disobedience as more probable than the equally cogent inference of negligent failure. Again, the mere fact that instructions were violated cannot under the factual circumstances of this be legally equated with a conscious disregard of those instructions (see, Hoffmeister v Oak-tree Homes, supra). Moreover, the shadowy semblance of an issue is not sufficient to warrant a fact-finding trial (see, Jeffcoat v Andrade, 205 AD2d 374, 375; Di Sabato v Soffes, 9 AD2d 297, 300) nor is the mere hope that additional helpful evidence might emerge on a trial (see, Amatulli v Delhi Constr. Corp., 77 NY2d 525, 533-534; Trails W. v Wolff, supra; Bachrach v Farbenfabriken Bayer AG, 36 NY2d 696, 697).
*353 Finally, the indemnification question can be resolved by reference to the contract and to the definition of "agent” set out in Russin v Picciano & Son (54 NY2d 311, 318), where the Court of Appeals stated, "[w]hen the work giving rise to these [statutory] duties has been delegated to a third party, that third party then obtains the concomitant authority to supervise and control that work and becomes a statutory 'agent’ of the owner or general contractor”. McCombs, which is liable by contract for the acts of agents, claims that D&G was not its agent but an independent contractor. Once McCombs contracted with D&G for the skylight work, however, D&G became McCombs’ agent by operation of law; and McCombs is answerable under Labor Law § 240 (1) just as Duke, the general contractor, would be for McCombs’ acts.
Plaintiff’s counsel should prepare an order dismissing the defendants’ affirmative defense, granting partial summary judgment as to liability, and granting defendants’ motion for contractual indemnification from third-party defendant McCombs. The common-law indemnification claims are dismissed as academic. Defendants, in addition, are to supply third-party defendant with a bill of particulars within 20 days of the entry of this order. No costs are payable.