■ MICHAEL HARRINGTON et al., Appellants v STATE OF NEW YORK, Respondent. [715 NYS2d 807] —Carpinello, J. Appeal from a judgment of the Court of Claims (King, J.), entered September 7, 1999, upon a decision of the court in favor of the State following a bifurcated trial on the issue of liability.

A detailed recitation of the facts can be found in our prior decision in this matter (255 AD2d 819), wherein we denied claimants' motion for summary judgment on the issue of liability under Labor Law § 240 (1) finding triable issues of fact as to whether claimant Michael Harrington (hereinafter claimant) was a recalcitrant worker. Briefly, claimant was injured in the course of his work as a rigger on a State-owned bridge when he chose to descend from a pier by sliding down a containment tarp which ripped. Following this Court's decision denying summary judgment, the matter proceeded to trial on the issue of Labor Law § 240 (1) only, all other causes of action having been withdrawn. After resolving a critical disputed fact in favor of the State, namely, the precise location of the accident,[1] the Court of Claims determined that claimant was a recalcitrant worker in that he deliberately refused to use an available safety device "both in climbing to the pier and in descending from it." Claimants appeal.

Labor Law § 240 (1) imposes absolute liability on an owner, contractor or agent for an injury proximately caused by any breach of the statutory duty to provide workers with proper safety devices (*see, Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559). This statutory duty, however, "does not extend to workers who have adequate and safe equipment available to them but refuse to use it" (*Smith v Hooker Chems. & Plastics Corp.*, 89 AD2d 361, 366, *appeal dismissed* 58 NY2d 824). Thus, the recalcitrant worker defense "requires a showing that the injured worker refused to use the safety devices that were provided by the owner or employer" (*Stolt v General Foods Corp.*, 81 NY2d 918, 920; *see, Jastrzebski v North Shore School Dist.*, 223 AD2d 677, 679, *affd* 88 NY2d 946; *Smith v Hooker Chems. & Plastics Corp., supra*, at 366).

The record reveals that on the morning that claimant was injured, he was in the process of relocating dust collector tubes which entailed dropping them to the ground. It was for this

---

1. At trial, claimants argued that the accident took place on Pier 3, Northbound, which was seriously contradicted by entries in the engineer's daily project diary and the testimony of the State's expert witness. The Court of Claims determined that claimant's accident occurred on Pier 1, Southbound. Claimants do not challenge the court's resolution of this disputed factual issue on appeal.

purpose that claimant initially accessed the bridge pier by walking along the bridge flanges. As he walked across the flanges, claimant was not "tied off" even though he had been provided with a lanyard and harness (and was wearing both at the time) and even though he knew that he was to be tied off at all times when working on an elevation over six feet. Of note, claimant testified that he "probably could have hooked [his lanyard] to the K-braces between the I-beams" as he walked across the bridge pier but that he did not do so. Also of note, the Court of Claims specifically found that claimant's conduct in accessing the pier was recalcitrant because he deliberately refused to use a safety device at this time.

The record further reveals that when claimant reached his destination on the pier, he "came to the conclusion that [he] was not needed over there [because another worker had already dropped the tube] and [he had] to get back to the ground." No emergency existed at this time nor did anyone instruct him to slide down the tarp to gain access to the ground. Rather, claimant made a voluntary decision to use the tarp because, according to him, he did not like his other options. These other options included using a "pick scaffold," calling for a ladder or a rope or returning along the same route he had just taken.

Specifically, a worker who slid down the containment tarp right before claimant testified that claimant could have used, *inter alia*, the pick scaffold to gain access to the ground. Moreover, claimant himself testified that a pick scaffold was available on the back side of Pier 1, the pier that the Court of Claims determined he was on when the accident occurred, and that another was available between Piers 1 and 2. As to why he did not exit the pier in the same manner that he entered it just minutes before—by traversing the flanges—claimant claimed that this option was too dangerous because the flanges were slippery, testimony the Court of Claims astutely characterized as "suspect."

Upon our review of the record, we are satisfied that competent evidence supports the Court of Claims' finding that claimant simply refused to employ available safety devices on the morning of his accident, instead choosing to slide down a tarp which did not qualify as a Labor Law § 240 safety device. First, there is record support for the finding that a safety device was indeed available to claimant in his immediate work area that could have been utilized by him as a safe and appropriate means to descend from the pier, namely, the pick scaffold. In our view, this evidence was sufficient to support the recalcitrant

worker defense, i.e., it sufficiently established that a safety device was "available and in place for use at the work station by the worker" (*Kaffke v New York State Elec. & Gas Corp.*, 257 AD2d 840, 841; *see, Powers v Del Zotto & Son Bldrs.*, 266 AD2d 668, 669), as opposed to somewhere on the work site generally (*compare, Powers v Del Zotto & Son Bldrs.*, *supra*; *Ortega v Catamount Constr. Corp.*, 264 AD2d 323, *lv denied* 94 NY2d 755; *Kaffke v New York State Elec. & Gas Corp.*, *supra*)[2] Said differently, recognizing that "the clear weight of authority on this issue is that the safety device must be visible at the worker's immediate work site" (*Kaffke v New York State Elec. & Gas Corp.*, *supra*, at 841; *see, Powers v Del Zotto & Son Bldrs.*, *supra*, at 669), we are satisfied that the State met this burden. Moreover, claimant also had another safe means of egress from Pier 1 other than sliding down the tarp, i.e., he could have descended from the pier by using the same path that he employed to access it, albeit *with* the use of available safety devices, namely, his harness and lanyard (*see, Lozada v State of New York*, 267 AD2d 215, *lv dismissed* 95 NY2d 861).

As a final matter, we further agree with the Court of Claims' conclusion that claimant's conduct in voluntarily sliding down the tarp was the sole and superceding cause of his injuries (*see, e.g., George v State of New York*, 251 AD2d 541, 542, *lv denied* 92 NY2d 815; *Antonik v New York City Hous. Auth.*, 235 AD2d 248, *lv denied* 89 NY2d 813; *Cannata v One Estate*, 127 AD2d 811, 813; *Mack v Altmans Stage Light. Co.*, 98 AD2d 468, 471-472; *see also, Weininger v Hagedorn & Co.*, 91 NY2d 958, 960).

Peters, J. P., Graffeo and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.

2. In contrast, although there was ample evidence in the record that many ladders were available on the work site in general which claimant could have called for to assist him in getting to the ground, no specific testimony was elicited establishing that a ladder was available at or near Pier 1 itself.